IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:18CR94 |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | |
| DONTE L. GIBSON, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |
| | ) | |

Now comes the United States of America, by and through counsel, Justin E. Herdman, United States Attorney, and Mark S. Bennett, Assistant United States Attorney, and respectfully submits the United States' sentencing memorandum for consideration by this Court in advance of defendant Donte L. Gibson's sentencing hearing, currently scheduled for Tuesday, November 26, 2019 at 10:00 a.m.

Specifically, the United States submits its sentencing memorandum in support of the following issues:

(1) a base offense level of thirty (30) levels based on the applicable drug amount of at least 100 G but less than 300 G of a Fentanyl Analogue (Carfentanil), pursuant to *U.S.S.G. § 2D1.1(a)(5)*;

(2) a two (2) level increase based on the fact that Defendant plead to a violation of 18 U.S.C.§ 1956, pursuant to *U.S.S.G. § 2S1.1(b)(2)(B)*;

(3)    a four (4) level increase based on the applicable "organizer or leader of a criminal activity that involved five or more participants" enhancement, pursuant to *U.S.S.G. § 3B1.1(a)*; and,

(4)    a two (2) level increase based on the "obstruction of justice" enhancement for directly threatening, intimidating, or otherwise unlawfully influencing a co-defendant, namely: Audrey Gibson, pursuant to *U.S.S.G. § 3C1.1*.

Ultimately, the United States would request that this Court impose all of the enhancements above, which would result in an offense level of thirty-eight (38) for Defendant Donte Gibson. Because of Gibson's attempted obstruction of justice and his continued criminal activity while incarcerated awaiting sentencing, which is discussed below, the United States does not believe Gibson should receive any reduction for acceptance of responsibility.

According to his Presentence Investigation Reports ("PSR"), Defendant's criminal history calculations is twenty-two (22), placing each of him in a category of VI. Accordingly, with an offense level of 38 and a criminal history category of VI, Defendant would have a Sentencing Guideline range of 360 months to life. The United States requests that this Court sentence Defendant Donte Gibson within this Guideline range.

## MEMORANDUM IN SUPPORT

**I.     Factual and Procedural Background**

From 2016 through 2018, Defendant ran a drug trafficking organization ("DTO") and money laundering organization ("MLO")[1]. Defendant's DTO imported large amounts of

---

[1] Defendant Donte Gibson admitted to the facts summarized in the United States sentencing memorandum in his previously signed written plea agreement (Ex. 1, R. 80: Plea Agreement, PageID 497 – 513, attached hereto and incorporated herein), and in open court during his initial change of plea. (Ex. 2, R. 84: Change of Plea Hearing on Sept 24, 2018 Trans., PageID 641 – 50,

Fentanyl and Carfentanil from a Chinese supplier over the internet through the dark web, and then distributed these drugs throughout the Akron and Lorain areas. Defendant and others involved in the conspiracy used various P.O. boxes as the delivery addresses for the Fentanyl and Carfentanil from China, and arranged for other individuals to pick up the packages from China, and bring them to Defendant's home and elsewhere.

The investigation determined that Defendant cut or mixed Fentanyl and/or Carfentanil with a cutting agent, which turned approximately 70 to 80 grams of pure Fentanyl and/or Carfentanil into approximately 7 kilograms of saleable product. Defendant and others distributed the mixed Fentanyl and Carfentanil to others to sell in the Akron area. Defendant and others also mailed, and used others to mail, Fentanyl and Carfentanil to co-defendants Ajarae Hisle and Jamar Jackson in Lorain, Ohio. On November 13, 2017, Defendant and co-defendant Audrey Gibson knowingly possessed with the intent to distribute approximately 4.61 grams of Carfentanil. On November 28, 2017, Defendant and co-defendants Audrey Gibson and Lisa Richardson knowingly possessed with the intent to distribute approximately 5.05 grams of Carfentanil. Further, in December 2017, Defendant's DTO caused international packages containing 51 grams of Fentanyl and 48 grams of Fentanyl to be mailed from China to the Canton, Ohio, area.

Additionally, while executing a search warrant on February 8, 2018, law enforcement seized approximately 200 grams of what appeared to be a controlled substance from a home shared by co-defendants Dontaysha Gibson, one of Donte's twin daughters, and Derrick Adams, her boyfriend. Approximately 28 grams of this controlled substance was seized from

---

attached hereto and incorporated herein).

Dontaysha's dresser drawer, and the other approximate 170 grams of this controlled substance was found in a duffel bag in Derrick Adams' vehicle, which was separated into three separate plastic bags.  The investigation determined that Defendant provided this controlled substance to his daughter and her boyfriend.

On February 26, 2018, FBI Special Agent Timothy Edquist submitted the controlled substance seized from co-conspirators' homes during the search warrant execution for testing at the Bureau of Criminal Investigation ("BCI").  BCI Forensic Scientist Keith Taggart tested all of the substances submitted by SA Edquist.  Taggart found that the first bag (the substance seized from Defendant's daughter's dresser) weighing 27.50 grams +/- .04 grams, contained Carfentanil. (*See* Ex. 3, BCI Laboratory Report, Dated March 12, 2018).  Taggart also found that the second bag, comprised of three separately bagged substances (the substances seized from Derrick Adams' vehicle), weighing 5.99 grams +/- .04 grams, 97.42 grams +/- .04 grams, and 65.16 grams +/- .04 grams, respectively, all contained Carfentanil. (Id.)  Taggart also found that the third bag submitted, weighing 110.62 grams +/- .04 grams, contained no controlled substances. (Id.)  Thus, the same BCI Forensic Scientist found that approximately 200 grams[2] of the submitted substances contained detectable amounts of Carfentanil, and that the submitted substance of approximately 110.62 grams did not.

On May 23, 2018, the Grand Jury returned a 17-count Superseding Indictment, charging Defendant with, *inter alia*, conspiracy to possess and distribute Fentanyl, and more than 100 grams of Carfentanil, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 802(32); two counts

---

[2]  The difference between the approximate 201.5 grams charged in the Superseding Indictment and the approximate 196 grams recorded by BCI does not affect the statutory section, or the Sentencing Guideline calculation.

of possession with intent to distribute Carfentanil, totaling approximately 10 grams, in violation of §§ 21 U.S.C. 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2; and, two counts of attempt to possess with intent to distribute Fentanyl, totaling approximately 100 grams, in violation of 21 U.S.C. § 846, 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2. (R. 61: Superseding Indictment, PageID 332-43).

Defendant previously entered a guilty plea pursuant to a Rule 11(c)(1)(C) written plea agreement with an agreed upon sentence of 240 months. (Ex. 1, R. 80: Plea Agreement, PageID 484 – 513; Ex. 2, R. 84: Change of Plea Hearing on Trans., PageID 649-50.)  However, the Court granted Defendant's motion to withdraw his guilty plea given statutory penalty changes in the First Step Act.  Defendant, then, moved this Court to issue an order requiring the government to have an independent test of the Carfentanil submitted to BCI by SA Edquist on February 26, 2018 conducted.  The Court granted Defendant's motion and ordered the retesting of the Carfentanil.  After extensive research and discussions, the parties agreed on an independent laboratory to retest the Carfentanil and, on May 23, 2019, Accra Micro-Chem Laboratories, LLC produced a report confirming the presence of Carfenail in each of the four bags of drugs previously tested by BCI. (Ex. 4, Accra Laboratory Report, Dated May 23, 2019.)

On September 6, 2019, Donte Gibson again plead guilty to  Counts 1 and 13 in the Superseding Indictment, and admitted to the factual allegations to support those two counts. (R. 249: Change of Plea Hearing on Sept. 9, 2016 Trans., PageID 1998, 2008 – 17.)

## II. Applicable Guideline Calculations

### A. Base Offense Level of Thirty (30) Is Appropriate Based On The Amount Found

As discussed above, while executing a search warrant on February 8, 2018, law enforcement seized approximately 200 grams of what appeared to be a controlled substance from

5

a home shared by co-defendants Dontaysha Gibson, one of Donte's twin daughters, and Derrick Adams, her boyfriend.  Approximately 28 grams of this controlled substance was seized from Dontaysha's dresser drawer, and the other approximate 170 grams of this controlled substance was found in a duffel bag in Derrick Adams' vehicle, which was separated into three separate plastic bags.  The investigation determined that Defendant provided this controlled substance to his daughter and her boyfriend.

These substances were tested and retested, and found to contain a detectable amount of Carfentanil by both labs that tested it.  Specifically, on February 26, 2018, BCI Forensic Scientist Keith Taggart tested all of the substances submitted, and found that the first bag (the substance seized from Defendant's daughter's dresser) weighing 27.50 grams +/- .04 grams, contained Carfentanil. (Ex. 3).  Taggart also found that the second bag, comprised of three separately bagged substances (the substances seized from Derrick Adams' vehicle), weighing 5.99 grams +/- .04 grams, 97.42 grams +/- .04 grams, and 65.16 grams +/- .04 grams, respectively, all contained Carfentanil. (*Id.*)  In addition, on May 23, 2019, Accra Micro-Chem Laboratories, LLC produced a report confirming the presence of Carfentanil in each of the four bags of drugs previously tested by BCI. (Ex. 4).

Indeed, during Defendant's initial change of plea hearing, Defendant admitted that the substances contained Carfentanil:

> THE COURT:  There was [C]arfentanil but you are contesting it was not that full amount because it was cut with something else.  You don't dispute the fact that when you put the [C]arfentanil with the cutting agent, it was over 100 grams.  Am I right?
>
> DEFENDANT:  I am not disputing that, your Honor, I am not disputing that.
>
> (Ex. 2, R. 84: Change of Plea Hearing on Trans., PageID 649-50).

6

Defendant agreed that the Carfentanil that he mixed with a cutting agent is more than 100 grams.  Defendant may now attempt to argue that there was not in excess of 100 grams of Carfentanil, but he has already agreed in open court, under oath, that he cut the Carfentanil with a cutting agent and that there was in fact a detectable amount of Carfentanil in that substance.

In addition, Defendant may also attempt to argue that he did not know about, or have access/control over this particular amount of drugs because it was found at his daughter's and her boyfriend's apartment and car.  But the investigation determined that Dontaysha Gibson and Derrick Adams received those drugs from Donte Gibson.  In addition, in a jail call between Donte and Audrey Gibson, Donte advised Audrey of the name of the individual that he sent the Carfentanil to Mansfield for this individual to purchase, but who rejected it saying it was not of high enough quality. (*See* Exhibits 5 and 5 – 9, Jail Call between Donte and Audrey Gibson, Dated 5/22/2019[3].)  Audrey states that she did not know who Bob was. (Id.)

By his own statement, Donte established that this individual was his contact, and not Audrey's, and that he was aware these specific drugs were taken down to this individual in Mansfield in an effort to sell the drugs to him.  One can also logically infer, as the investigation corroborated, that Defendant instructed Derrick Adams and his daughter Dontaysha to take the drugs to this individual in an effort to distribute it.

Accordingly, the investigation determined and Defendant's own words confirm that he provided and controlled the Carfentanil in question, and both lab tests have concluded that the substance in question contained a detectable amount of Carfentanil.  As such, this Court should

---

[3] The United States provided Exhibit 5 – a summary of the clips of the phone calls between Donte and Audrey Gibson and Exhibits 5 – 1 through 5 – 9 on a disk of the relevant jail calls between Donte and Audrey Gibson – to the Court and Defendant's counsel at the time of the filing of its sentencing memorandum.

accept the government's argument and the PSR's determination that Defendant's proper base offense level should be thirty (30).

      B.      <u>The Presentence Report Correctly Imposes a Four Level Enhancement for "Organizer/Leader" on Defendant's Conduct.</u>

The investigation and evidence establishes the Defendant knew about, controlled, and directed every aspect of the DTO he operated with his wife, Audrey Gibson. Although Audrey may have actually ordered the Fentanyl and Carfentanil over the Dark Web, the investigation determined that Defendant was aware that she doing so in order to advance the DTO. The same can be said of the recruitment of individuals, such as co-defendants Richardson and Garret, to open P.O. Boxes and retrieve shipments of Fentanyl and Carfentanil from China after they were ordered from the Dark Web. The investigation determined that Defendant was the one who "cut" the pure Fentanyl and/or Carfentanil with a cutting agent, in this case a supplement purchased from GNC, in order to make a larger amount of the drugs to sell. This included the approximate 200 grams he gave to his daughter, Dontaysha, and her boyfriend, Derrick Adams, to sell to an individual in the Mansfield area.

To the extent Defendant attempts to argue that it was Audrey Gibson who was the leader/organizer of the DTO, Defendant's conduct while incarcerated also cuts against his argument and supports a finding that Donte was the leader/organizer of the drug trafficking efforts of the co-defendants in this case. First, on August 13, 2018, while NEOCC, Gibson dropped a contraband cell phone. (Ex. 6, NEOCC Incident Report, Dated 8/13/2018) NEOCC does not allow inmates to possess cell phones while incarcerated because it is understood that the vast majority of those who possess contraband cell phones do so in order to continue to engage in illegal activities, mostly drug distribution. Specifically, on February 4, 2019, Defendant discussed how he could purchase liquid drugs to spray on paper in order sell it in the correctional

facilities. (Ex. 5 - 2, Jail Call between Donte and Audrey Gibson, Dated 2/4/2019.)  On May 22, 2019, Defendant advised Audrey to find out what a particular correctional officer likes so that they can attempt to do something for that officer so that officer might assist them by looking the other way while they smuggled in the aforementioned narcotics on legal papers and sold them.[4] (Ex. 5 – 8, Jail Call between Donte and Audrey Gibson, Dated 5/22/2019.)  Then, on May 24, 2019, while detained in this case at the Northeast Ohio Correctional Center ("NEOCC"), Defendant was found in the possession of four (4) contraband cell phones. (Ex. 7, NEOCC's Incident Report, Dated 5/24/2019.)  Again, the United States argues that these four (4) contraband cell phones, taking in connection with his previous telephone discussions with Audrey, establishes that Donte Gibson was still engaged in drug trafficking activities.

This conclusion is further bolstered Donte Gibson's attempt to draw co-defendant Dontaysha's twin sister, Shontasyha Gibson, into his drug trafficking activity.  Specifically, on July 1, 2019, while incarcerated in this matter, Donte Gibson hand wrote step-by-step instructions to Shontaysha on how to saturate pieces of paper with narcotics and mark the pages as if they contained "legal" information in order to smuggle drugs into the facility so that he could sell them to other inmates. (Ex. 8, NEOCC's Incident Report, Dated 7/1/2019.)  So, after involving one of his twin daughter, Dontaysha, in his DTO such that she was charged in the current federal felony drug conspiracy count, Defendant now attempted to recruit his other twin daughter, Shontaysha, into the drug distribution business with him.  This is Donte – not Audrey – operating as the leader/organizer of a drug trafficking organization.

---

[4]  The United States wants to be clear that it knows of no such correctional officer being willing to or actually assisting the Gibsons in this endeavor.

9

Finally, as if this was not enough evidence of Donte Gibson's attempt to continue operating his DTO, on October 3, 2019, while waiting to be sentenced in the current case for operating a DTO, a NEOCC officer noticed that Gibson's cellmate received a piece of mail with a return address known to be associated with Gibson. (Ex. 9, NEOCC Incident Report, Dated 10/3/2019).  NEOCC tested that document and it tested positive for heroin. Id.  NEOCC, then, searched Gibson's cell to find four (4) other pieces of mail among Gibson's belonging that all also tested positive for heroin. Id.  So, just has Donte has instructed Shontaysha to do in his hand written, step-by-step instructions on how to get illegal narcotics into NEOCC, approximately five (5) pieces of paper show up associated to Donte Gibson that test positive for heroin.

In addition to this alarming attempt to recruit his other daughter, Defendant's jail calls with Audrey, and the discovery of five pieces of paper that tested positive for heroin establish that Donte Gibson attempted to stay in the drug trafficking business, and supports the conclusion that the PSR's conclusion that a four (4) level role enhancement as the leader/organizer of the DTO is appropriate.  Accordingly, based on his continued drug trafficking activity while incarcerated and because the investigation established that Donte Gibson knew about and/or controlled every aspect of the DTO prior to his indictment, Defendant qualifies as an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," pursuant to *U.S.S.G. § 3B1.1(a)*.  The Unites States respectfully requests this Court to accept the four (4) level enhancement to Donte Gibson's sentencing guideline calculations, as applied in the Presentence Report.

       C.      <u>Defendant's Offense Levels Should be Increased by Two Levels Based on His Attempt to Obstruction of Justice</u>.

Pursuant to *U.S.S.G. § 3C1.1*, if the "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with regard to the…prosecution…of the instant

10

offense of conviction" and "the obstructive conduct related to (A) defendant's offense of conviction…" the Court should increase the defendant's offense level calculation by two (2) levels.  This enhancement applies to Defendant because he made several attempts during his jail calls with Audrey Gibson – in those calls we were able to attribute to Donte and Audrey – to convince her, through threats and/or coercive use of guilt, to recant the statement he believes she made to law enforcement at the time of the execution of the search warrant and her arrest. Defendant plead with Audrey on several instances to withdraw the statement he believes she made, because without her alleged statement the government did not have a case against him. Defendant also made an inferred threat as to what would happen to her in the streets for being a snitch.

    Specifically, on February 4, 2019, Donte told Audrey that she could free him because his hands were not on the package that day. (Ex. 5 – 1, Jail Call between Donte and Audrey Gibson, Dated 2/4/2019.)  On February 5, 2019, Donte again attempted to manipulate her through guilt telling Audrey she could free him and that the Government does not have a case on him without her. (Ex. 5 – 3, Jail Call between Donte and Audrey Gibson, Dated 2/5/2019.)  Also, on that day Donte attempted to coerce Audrey by saying that he frees people versus taking people with him and compared Audrey to another individual who snitched and made the government's case. (Id.; Ex. 5 – 4, Jail Call between Donte and Audrey Gibson, Dated 2/5/2019.)

    On February 8, 2019, Donte turned up the pressure on Audrey by telling her that the "streets are pissed" that she did what she did [snitched], but claiming that he would not let anyone harm her, which can be inferred as a threat that he controls whether she is safe and if she does not do what he is asking her to do then he will not protect her. (Ex. 5 – 5, Jail Call between Donte and Audrey Gibson, Dated 2/8/2019.)  The next day, Donte again pressures Audrey to tell

the Court that she was the one who did everything so the he can go free. (Ex. 5 – 6, Jail Call between Donte and Audrey Gibson, Dated 2/9/2019.)  Finally, the very next day, Donte again tried to coerce Audrey in to believing she was wrong for saying what he thinks she said to the government, and that she should have played it like she was just a user because the only evidence the government has is her alleged statements. (Ex. 5 – 7, Jail Call between Donte and Audrey Gibson, Dated 2/10/2019.)

As previously stated above, the United States was not able to secure every telephone call between Donte and Audrey Gibson because Donte used several contraband cell phones while incarcerated while waiting for his sentencing hearing, and Audrey used other inmates' PIN making it difficult to identify when she was initiating a telephone call.  If Donte made these veiled threats and used guilt in an attempt to coerce and manipulate Audrey to change the story he believed she told the government during the limited number of calls the government was able to obtain, then it is fair to conclude that other such conversation took place.

In any event, the United States believes that Donte's use of threats and/or use of guilt satisfies the Guideline's obstruction of justice enhancement, ursuant to *U.S.S.G. § 3C1.1*, and respectfully requests the Court to increase Donte Gibson's offense level calculation by two (2) levels

        D.      <u>In Addition to Defendant's Attempt to Obstruction of Justice, His Continued Criminal Conduct While Incarcerated Bars Him From Getting a Reduction for Acceptance of Justice</u>.

"A defendant who enters a guilty plea in not entitled to an adjustment under this section [§3E1.1] as a matter of right." *U.S.S.G. § 3E1.1, cmt 3*.  There are several factors that the Guideline suggest this Court can look at to determine whether a defendant has demonstrated acceptance of responsibility such that he be awarded the two-level reduction, among these

factors is the defendant's "voluntary termination or withdrawal from criminal conduct or association". *U.S.S.G. § 3E1.1, cmt 1(B)*.  In addition, "[c]onduct resulting in an enhancement under §3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." *U.S.S.G. § 3E1.1, cmt 4*.

In addition to his attempt to obstruct justice through his inferred threat and use of guilty in an effort to coerce Audrey Gibson that should bar him from receiving any reduction for acceptance of responsibility, Donte Gibson's conduct while incarcerated demonstrates that he continued to traffic and attempt to traffic drugs while incarcerated.  On August 13, 2018, while NEOCC, Gibson dropped a contraband cell phone. (Ex. 6, NEOCC Incident Report, Dated 8/13/2018).  NEOCC prohibits inmates from having cell phones because it is widely understood that the primary use for contraband phones is illegal activity – mostly drug trafficking.  Then, on February 4, 2019, Defendant discussed how he could purchase liquid drugs to spray on paper in order sell it in the correctional facilities. (Ex. 5-2, Jail Call between Donte and Audrey Gibson, Dated 2/4/2019.)  On May 22, 2019, Defendant advised Audrey to find out what a particular correctional officer likes so that they can attempt to do something for that officer so that officer might assist them by looking the other way while they smuggled in the aforementioned narcotics on legal papers and sold them. (Ex. 5 – 8, Jail Call between Donte and Audrey Gibson, Dated 5/22/2019.)  Then, on May 24, 2019, while detained in this case at the Northeast Ohio Correctional Center ("NEOCC"), Defendant was found in the possession of four (4) contraband cell phones. (Ex. 7, NEOCC's Incident Report, Dated 5/24/2019.)

This conclusion is further bolstered Donte Gibson's attempt to draw co-defendant Dontaysha's twin sister, Shontasyha Gibson, into his drug trafficking activity.  Specifically, on July 1, 2019, while incarcerated in this matter, Donte Gibson hand wrote step-by-step

13

instructions to Shontaysha on how to saturate pieces of paper with narcotics and mark the pages as if they contained "legal" information in order to smuggle drugs into the facility so that he could sell them to other inmates. (Ex. 8, NEOCC's Incident Report, Dated 7/1/2019.)

Finally, on October 3, 2019, while waiting to be sentenced in the current case for operating a DTO, a NEOCC officer noticed that Gibson's cellmate received a piece of mail with a return address known to be associated with Gibson. (Ex. 9, NEOCC Incident Report, Dated 10/3/2019).  NEOCC tested that document and it tested positive for heroin. Id.  NEOCC, then, searched Gibson's cell to find four (4) other pieces of mail among Gibson's belonging that all also tested positive for heroin. Id.  So, just has Donte has instructed Shontaysha to do in his hand written, step-by-step instructions on how to get illegal narcotics into NEOCC, approximately five (5) pieces of paper show up associated to Donte Gibson that test positive for heroin.

In addition to the attempt to recruit his other daughter, Defendant's jail calls with Audrey, the multiple contraband cell phones, and the discovery of five pieces of paper associated with Gibson that tested positive for heroin establish that Donte Gibson attempted to stay in the drug trafficking business.  This supports the conclusion that he did not "withdrawal from criminal conduct" and, therefore, supports the PSR's recommendation that Donte Gibson should not be awarded with any reduction in offense levels for acceptance of responsibility.

**III.     Conclusion**

    For the foregoing reasons, the United States respectfully requests that this Court determine that Donte Gibson has an offense level of 38 with a criminal history category of VI and, therefore, a Sentencing Guideline range of 360 months to life.  The United States requests that this Court sentence Defendant Donte Gibson within this Guideline range.

              Respectfully submitted,

              JUSTIN E. HERDMAN,
              United States Attorney

      By:   /s/ Mark S. Bennett
              Mark S. Bennett (OH: 0069823)
              Assistant United States Attorneys
              801 W. Superior Ave Suite 400
              Cleveland, OH 44113
              (216) 622-3878
              (216) 522-7358 (fax)
              Mark.Bennett2@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November, 2019, a copy of the foregoing Government's Sentencing Memorandum was filed electronically, and will be overnighted to defense counsel as well because of the exhibits contained on the disk hand filed with the Court. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Mark S. Bennett
Mark S. Bennett (0069823)
Assistant U.S. Attorney