FILED

2018 SEP 24  PM 12: 01

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:18CR94 |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | |
| DONTE L. GIBSON, | ) | |
| | ) | PLEA AGREEMENT |
| Defendant. | ) | |
| | ) | |

Pursuant to Rules 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and in

consideration of the mutual promises set forth below, the United States Attorney's Office for the

Northern District of Ohio (hereinafter "USAO"), by and through its undersigned attorney(s), and

the defendant, DONTE L. GIBSON (hereinafter "Defendant"), agree as follows:

## MAXIMUM PENALTIES AND OTHER
## CONSEQUENCES OF PLEADING GUILTY

1.     **Waiver of Constitutional Trial Rights.**  Defendant understands that Defendant

has the right to plead not guilty and go to trial.  At trial, Defendant would be presumed innocent,

have the right to trial by jury or, with the consent of the United States, to trial by the Court, the

right to the assistance of counsel, the right to confront and cross-examine adverse witnesses and

subpoena witnesses to testify for the defense, the right to testify and present evidence, and the

right to be protected from compelled self-incrimination.  Defendant understands that Defendant

**GOVERNMENT
EXHIBIT
1
5:18CR94**

*Defendant's Initials* DLG

Plea Agreement of DONTE L. GIBSON – page 2 of 30

has the right to an attorney at every stage of the proceedings and, if necessary, one will be appointed to represent Defendant.  Defendant understands that by pleading guilty, Defendant specifically and voluntarily waives each of these trial rights, except the right to counsel. Defendant understands that a guilty plea is a complete admission of guilt and if the Court accepts the guilty plea, the Court will find Defendant guilty without a trial.

2.     **Statutory Penalties.**  Defendant understands that the statutory maximum penalties, and minimum penalties if applicable, for the counts to which Defendant agrees to plead guilty are as follows:

| Counts | Statute and Description of Offense | Statutory Sentence Per Count |
|--------|-----------------------------------|------------------------------|
| 1 | Title 21 U.S.C. § 846: Conspiracy to Distribute Fentanyl and Carfentanil, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 802(32) | Minimum imprisonment: 10 years |
| | | Maximum imprisonment: Life |
| | | Minimum Statutory fine: $10,000,000 |
| | | Maximum Statutory fine: $20,000,000 |
| | | Minimum period of supervised release: 5 years |
| | | Maximum period of supervised release: Life |
| 13 | Title 18 U.S.C. § 1956(h): Conspiracy to commit Money Laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (ii) | Maximum imprisonment:  20 years |
| | | Maximum Statutory fine: $250,000 |
| | | Maximum period of supervised release: 3 years |

3.     **Minimum sentence must include imprisonment.**  The sentence for the offense charged in Count 1 may not be satisfied by a term of probation and must include some period of imprisonment.

4.     **Statutory Enhancement and Forbearance Notice.**  Defendant understands that the United States has filed a notice, in accordance with the provisions of 21 U.S.C. § 851(a)(1), United States Code, setting forth at least one prior felony conviction for Defendant, and invoking the penalty for Count 1 is a mandatory minimum period of 20 years incarceration, a $20,000,000.00 fine, or both, and a mandatory period of at least 10 years of supervised release

*Defendant's Initials* ⅅℒ Ꮐ

Plea Agreement of DONTE L. GIBSON – page 3 of 30

with the maximum of life.  Defendant hereby agrees and affirms that Defendant has been previously convicted of the felony drug offenses as alleged in the notice filed by the government, to wit: (1) Trafficking in Heroin (F-4), case number CR-2009-09-2827, in the Summit Court of Common Pleas, on or about July 7, 2010.  Defendant further waives any challenge to the prior conviction and the sentencing enhancement under the provisions of 21 U.S.C. §§ 841(b) and 851 United States Code.  The USAO agrees that it will not file a second 851 enhancement information against Defendant.  Defendant understands that if the second enhancement information was filed against him and he was convicted of the charges set forth in Count 1 of the Superseding Indictment, he would be subject to a mandatory term of life incarceration and fine of up to $20,000,000.

5.    **Special Assessment.**  As set forth above, Defendant will be required to pay a mandatory special assessment of $100 for each count of conviction, for a total of $200, due immediately upon sentencing.

6.    **Costs.**  The Court may order Defendant to pay the costs of prosecution and sentence, including but not limited to imprisonment, community confinement, home detention, probation, and supervised release.

7.    **Forfeiture.**  Defendant agrees as part of this plea agreement to the forfeiture of the following properties to the United States:

•    $148,400.00 U.S. Currency seized on February 8, 2018, at 80 West Waterloo Road, Akron, Ohio (storage unit: M42A).

•    A total of $12,461.00 U.S. Currency seized on February 8, 2018, at 2946 Popham Street, Akron, Ohio.

*Defendant's Initials* ᴧᴄᴳ

Plea Agreement of DONTE L. GIBSON – page 4 of 30

- 29 round empty magazine and (29) .40 caliber rounds in box, seized on February 8, 2018, at 2946 Popham Street, Akron, Ohio.

- 22 round magazine with (12) rounds of .40 caliber ammunition, seized on February 8, 2018, at 2946 Popham Street, Akron, Ohio.

- $19,960.00 U.S. Currency seized on February 8, 2018, at a residence located on Greenbay Drive, Barberton, Ohio.

- 2946 Popham Street, Akron, Ohio, Permanent Parcel Number: 6800487.  The legal description of the property is as follows: Situated in the City of Akron, County of Summit, and State of Ohio: And known as being the Easterly 60 feet between parallel lines of Lot Number Eight Hundred Eighty-three (883), plus the Easterly 60 feet between parallel lines of Lot Number Eight Hundred Eighty-four (884), plus the Easterly 60 feet between parallel lines of Lot Number Eight Hundred Eighty-five (885), except the Northerly 33 feet front and rear of Lot Number Eight Hundred Eighty-five (885), in the William A. Johnston's Coventry Allotment No. 2, as recorded in Plat Book 26, Pages 65-75 inclusive, Summit County Records.

- $42,230.79 seized on or about April 18, 2018, pursuant to the execution of a federal seizure warrant.  The seizure warrant was executed against The RealReal User Account Identification Number xxx2598 in the name of AUDREY GIBSON.

- Proceeds in the amount of $34,479.96 recovered from Community Hall Foundation (dba The Civic) on or about June 8, 2018.

- 0.422851 bitcoin (valued at approximately $2,600.11 on August 14, 2018) stored in an application on an i-Phone recovered on February 8, 2018, at 2946 Popham Street, Akron, Ohio. The bitcoin is found in a bitcoin.com cell phone application under the wallet name "Personal Wallet" with a Wallet ID ending xxxxx35bead1.

*Defendant's Initials* DCG

Plea Agreement of DONTE L. GIBSON – page 5 of 30

7(A).   Defendant further agrees:

a.)   The $148,400.00 U.S. Currency, the $12,461.00 U.S. Currency, the $19,960.00 U.S. Currency, the proceeds of $34,479.96, and the 0.422851 bitcoin are subject to forfeiture under 21 U.S.C. § 853(a)(1) as they constitute, or were derived from, proceeds Defendant obtained, directly or indirectly, as the result of the commission of the violation (drug conspiracy) charged in Count 1 of the Indictment.

b.)   The 29 round empty magazine, the (29) .40 caliber rounds in box, and the 22 round magazine with (12) rounds of .40 caliber ammunition are subject to forfeiture under 21 U.S.C. § 853(a)(2) as they were used – or were intended to be used - in any manner or part, to commit or to facilitate the commission of the violation (drug conspiracy) charged in Count 1 of the Indictment.

c.)   The $42,230.79 seized on or about April 18, 2018, and the real property located at 2946 Popham Street, Akron, Ohio, are subject to forfeiture: (i) under 21 U.S.C. § 853(a)(1) as they constitute, or were derived from, proceeds Defendant obtained, directly or indirectly, as the result of the commission of the violation (drug conspiracy) charged in Count 1 of the Indictment; and, (ii) under 18 U.S.C. § 982(a)(1) as they were involved in the offense (money laundering conspiracy) charged in Count 13 of the Indictment, or are traceable to such property.

7(B).   Defendant states that she has an ownership interest in the above-described properties, and that she will take whatever steps are necessary to effectuate the forfeiture of the properties to the United States; including, but not limited to, the execution of whatever agreements, stipulations, and/or other documents that are necessary to effectuate the forfeiture. Particularly, with respect to the 0.422851 bitcoin, Defendant authorizes the IRS to transfer the bitcoin from Wallet ID ending xxxxx35bead1 to a wallet controlled by the United States.

*Defendant's Initials* DLG

7(C).    Pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, Defendant consents that this forfeiture will become final as to her upon the Court's entry of the Preliminary Order of Forfeiture.

8.    **Restitution.**  The Court may order Defendant to pay restitution as a condition of the sentence, probation, and/or supervised release.

9.    **Violation of Probation/Supervised Release.**  If Defendant violates any term or condition of probation or supervised release, such violation could result in a period of incarceration or other additional penalty as imposed by the Court.  In some circumstances, the combined term of imprisonment under the initial sentence and additional period of incarceration could exceed the maximum statutory term.

10.    **Immigration Consequences.**  Defendant understands that a convicted person who is not a United States citizen may be removed from the United States, denied citizenship and denied admission to the United States in the future.

## PLEAS AND OTHER CHARGE(S)

11.    **Agreement to Plead Guilty.**  Defendant agrees to plead guilty to Counts 1 and 13 of the Superseding Indictment in this case.

12.    **Dismissal of Counts.**  Upon sentencing, the USAO will move to dismiss the charges against Defendant in Counts 2, 3, 5, 6, 7, and 8 of the Superseding Indictment in this case.

## ELEMENTS OF THE OFFENSE

13.    The elements of the offenses to which Defendant will plead guilty are:

| Count 1 - Title 21 U.S.C. § 846: Drug Conspiracies |
| --- |
| 1: Two or more persons conspired, or agreed, to violate federal drug laws; |
| 2: Defendant knowingly and voluntarily joined the conspiracy; and, |
| 3: The Amount of Carfentinal involved in the conspiracy exceeded 100 grams. |

*Defendant's Initials* DCG

| Count 13 - Title 18 U.S.C. § 1956(h) |
| --- |
| 1: Two or more persons conspired, or agreed, to commit money laundering; and ; |
| 2: Defendant knowingly and voluntarily joined the conspiracy |

## SENTENCING STIPULATIONS AND AGREEMENTS

14. **Sentencing Guidelines**. Defendant understands that sentencing rests within the discretion of the Court; that federal sentencing law requires the Court to impose a sentence which is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a), and that the Court must consider among other factors the advisory United States Sentencing Guidelines in effect at the time of sentencing and that in determining the sentence, the Court may depart or vary from the advisory guideline range.

15. **Presentence Report**. Defendant understands that the advisory guideline range will be determined by the Court at the time of sentencing, after a presentence report has been prepared by the U.S. Probation Office and reviewed by the parties. Defendant further understands that the USAO may provide to the U.S. Probation Office all known information regarding Defendant's conduct subject to its limited use under U.S.S.G. § 1B1.8 and except as protected under the proffer agreement if any.

16. **Agreement to a Specific Sentence.** Pursuant Rule 11(c)(1)(C) and after considering the factors in 18 U.S.C. § 3553(a), the parties agree that the appropriate disposition of this case is for Defendant to receive a sentence that includes a specific sentence of 240 months imprisonment. Defendant understands that the Court may accept this plea agreement, reject it, or defer a decision until the Court has reviewed the Presentence Report. If the Court rejects the plea agreement, Rule 11(c)(5) will require the Court to inform the parties that the Court rejects the plea agreement, give Defendant an opportunity to withdraw the plea, and advise Defendant

*Defendant's Initials* DLG

Plea Agreement of DONTE L. GIBSON – page 8 of 30

that if the plea is not withdrawn, the Court may dispose of the case less favorably toward

Defendant than the plea agreement contemplates.

17.     **Allocution.**  Defendant understands and agrees that the USAO reserves the

opportunity to speak at Defendant's sentencing.  The USAO agrees that Defendant reserves the

right of allocution at sentencing.

18.     **Stipulated Guideline Computation.**  For purposes of determining Defendant's

statutory penalty and imprisonment range under the United States Sentencing Guidelines,

Defendant and the USAO agree and stipulate that the amount of drugs conspired to be possessed

with the intent to distribute and distributed in Count 1 is 201.8 grams of Carfentanil, which

corresponds to a combined base offense level of 30 pursuant to U.S.S.G.  § 2D1.1(c)(5).  The

parties further agree and stipulate that a four-level enhancement for being a leader, manager,

organizer is appropriate pursuant to U.S.S.G. § 3B1.1(a).  Thus, Defendant's adjusted base

offense level for Count 1 would be 34.  Defendant and the USAO recommend that, pursuant to

U.S.S.G. § 2S1.1(b)(2)(B), adding 2 levels.  The parties agree that pursuant to U.S.S.G. § 3D1.4,

the combined offense level for Counts 1 and 13 is 36.  However, the parties realize that

Defendant may be classified as a career offender based upon his prior criminal record.  The

parties agree that if Defendant is found to be a career offender, his adjusted base offense level

will be 37 pursuant to U.S.S.G. § 4B1.1(b) and Criminal History Category VI.  Finally, the

parties realize that based on the enhanced statutory penalty, Defendant's adjusted base offense

level must begin at the first level in his criminal history category that encompasses a 240 months

sentence pursuant to U.S.S.G. § 5G1.1(b).

*Defendant's Initials* DLG

Plea Agreement of DONTE L. GIBSON – page 9 of 30

| §2D1.1 Conspiracy to Possess with Intent to Distribute Fentanyl and Carfentinal | | |
|---|---|---|
| Base offense level | 30 | § 2D1.1(c)(5) |
| Money Laundering Conviction | + 2 | § 2S1.1(b)(2)(B) |
| Aggravating Role – organizer, leader, manager | + 4 | § 3B1.1(a) |
| **Total Offense Level before Acceptance of Responsibility** | **36** | |

Unless otherwise agreed to below, the parties agree that no other specific offense characteristics, Guideline adjustments or Guideline departures apply.

19. **Acceptance of Responsibility.**  The USAO has no reason to believe at this time that Defendant has not clearly and affirmatively accepted personal responsibility for Defendant's criminal conduct.  The USAO agrees to recommend a three (3) level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b), provided Defendant's conduct continues to reflect Defendant's acceptance of responsibility.  Defendant understands it will be up to the Court at the time of sentencing to determine whether a reduction for acceptance of responsibility is appropriate.

20. **Criminal History Category.**  The parties have no agreement about the Criminal History Category applicable in this case.  Defendant understands that the Criminal History Category will be determined by the Court after the completion of a Pre-Sentence Investigation by the U.S. Probation Office.  In addition, Defendant acknowledges that the Pre-Sentence Investigation Report prepared by U.S. Probation may determine that he is a Career Offender, and Defendant agrees that this Agreement is still binding if Defendant is found to be a Career Offender.

## WAIVER OF APPEAL AND POST-CONVICTION ATTACK

21. Defendant acknowledges having been advised by counsel of Defendant's rights, in limited circumstances, to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally

*Defendant's Initials* $\mathcal{NG}$

through a post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255.
Defendant expressly and voluntarily waives those rights, except as specifically reserved below.
Defendant reserves the right to appeal:  (a) any punishment in excess of the statutory maximum;
or (b) any sentence in excess of 240 months imprisonment.  Nothing in this paragraph shall act as
a bar to Defendant perfecting any legal remedies Defendant may otherwise have on appeal or
collateral attack with respect to claims of ineffective assistance of counsel or prosecutorial
misconduct.

## WAIVER OF STATUTE OF LIMITATIONS

22.    Defendant waives all defenses based on the statute of limitations with respect to
any prosecution that is not already time-barred by the applicable statute of limitation on the date
of Defendant's signing of this agreement and that is commenced within one year after any of the
following events: (1) Defendant fails to plead guilty at the plea proceeding or the Court refuses
to accept a guilty plea by Defendant pursuant to this agreement; (2) the Court permits Defendant
to withdraw a guilty plea entered pursuant to this agreement or otherwise vacates such a guilty
plea; or (3) the conviction obtained pursuant to this agreement is vacated, overturned, or
otherwise set aside.  Defendant understands the waiver of the statute of limitations is effective
immediately upon Defendant's signing of this agreement and is not conditioned upon the
approval of this agreement by the Court.

## FACTUAL BASIS AND RELEVANT CONDUCT

23.    Defendant agrees that the following summary fairly and accurately sets forth
Defendant's offense conduct and a factual basis for the guilty pleas.  Defendant further agrees
that the facts set forth in the summary are true and could be established beyond a reasonable
doubt if the case were to proceed to trial:  See Attachment A.

*Defendant's Initials* DCG

24.    Defendant acknowledges that the summary described in Attachment A of the Defendant's conduct does not set forth each and every fact that the USAO could prove at trial, nor does it encompass all of the acts which Defendant committed in furtherance of the offenses to which Defendant is pleading guilty.

## **OTHER PROVISIONS**

25.    **Financial Statement.**  Defendant agrees upon request to submit to the USAO, prior to the date of sentencing, a complete and accurate financial statement on a Financial Statement of Debtor Form to be provided by the USAO.

26.    **The Parties are Free to Advise the Court about Matters Not Expressly Addressed.**  This agreement is silent about all aspects of the determination of sentence not expressly addressed herein, and the parties are free to advise the Court of facts and to make recommendations to the Court with respect to all aspects of sentencing not agreed to herein.

27.    **Consequences of Breaching the Plea Agreement.**  Defendant understands that if Defendant breaches any promise in this agreement, commits additional crimes, obstructs justice, attempts to withdraw Defendant's guilty plea, or if Defendant's guilty plea is rejected by the Court or is vacated or set aside, the USAO will be released from all of its obligations under this agreement and may institute or maintain any charges and make any recommendations with respect to sentencing that otherwise would be prohibited under the terms of the agreement. Defendant understands, however, that a breach of the agreement by Defendant will not entitle Defendant to withdraw, vacate, or set aside Defendant's guilty plea or conviction.

28.    **Agreement not Binding on other Jurisdictions and Agencies.**  Defendant understands that this plea agreement is binding only on the United States Attorney's Office for the Northern District of Ohio.  It does not bind any other United States Attorney, any other federal agency, or any state or local government.

*Defendant's Initials* DCG

29.     **Defendant is Satisfied with Assistance of Counsel.**  Defendant makes the following truthful statements: I have discussed this case and this plea agreement in detail with my attorney who has advised me of my Constitutional and other trial and appeal rights, the nature of the charges, the elements of the offenses the United States would have to prove at trial, the evidence the United States would present at such trial, possible defenses, the advisory Sentencing Guidelines and other aspects of sentencing, potential losses of civil rights and privileges, and other potential consequences of pleading guilty in this case.  I have had sufficient time and opportunity to discuss all aspects of the case in detail with my attorney and have told my attorney everything I know about the charges, any defenses I may have to the charges, and all personal and financial circumstances in possible mitigation of sentence.  I am satisfied with the legal services and advice provided to me by my attorney.

30.     **Agreement Is Complete and Voluntarily Entered.**  Defendant and Defendant's undersigned attorney state that this agreement, including any addendums discussed in open court and on the record at the time of the change of plea (if any), is the entire agreement between Defendant and the USAO and that no other promises or inducements have been made, directly or indirectly, by any agent or representative of the United States government concerning any plea to be entered in this case.  In particular, no promises or agreements have been made with respect to any actual or prospective civil or administrative proceedings or actions involving Defendant, except as expressly stated herein.  In addition, Defendant states that no person has threatened or coerced Defendant to do or to refrain from doing anything in connection with this case, including Defendant's decision to enter a guilty plea.  Finally, Defendant acknowledges that this agreement cannot be modified unless in writing and subject to approval by the Court.

*Defendant's Initials* DLG

Plea Agreement of DONTE L. GIBSON – page 13 of 30

## SIGNATURES

**Defendant:**    I have read (or have had read to me) this entire plea agreement and have discussed it with my attorney.  I have initialed each page of the agreement to signify that I understand and approve the provisions on that page.  I am entering this agreement voluntarily and of my own free will.  No threats have been made to me, nor am I under the influence of anything that could impair my ability to understand this agreement.

_____        Date 9 /24 /18
Donte L. Gibson
Defendant


**Defense Counsel:** I have read this plea agreement and concur in Defendant pleading in accordance with terms of the agreement.  I have explained this plea agreement to Defendant, and to the best of my knowledge and belief, Defendant understands the agreement.

_____        9-24-18
Rhonda Kotnik                                          Date
Counsel for Defendant


**United States Attorney's Office:**  I accept and agree to this plea agreement on behalf of the United States Attorney for the Northern District of Ohio.

_____        9/24/18
Mark S. Bennett (OH: 0069823)                Date
Danielle K. Angeli (MI: P81362)
Assistant United States Attorney
Federal Building
2 South Main Street, Room 208
Akron, OH 44308
(330) 761-0523/(216) 622-3875 (ph)
(330) 375-5492/(216) 210-8523 (fx)
Mark.bennett2@usdoj.gov
DAngeli@usadoj.gov


APPROVED:

_____        9-24-18
PATRICIA A. GAUGHAN                            Date
United States District Court CHIEF JUDGE


*Defendant's Initials* DCG

Plea Agreement of DONTE L. GIBSON – page 14 of 30

## Attachment A

## FACTUAL BASIS FOR DRUG CONSPIRACY

1.     Defendant DONTE L. GIBSON ("GIBSON") resided on Popham Street in Akron, Ohio, and was married to defendant Audrey J. Gibson, aka Audrey J. Martin, (hereinafter collectively the "Gibsons" where appropriate).  GIBSON and Gibson-Martin operated a drug trafficking organization ("DTO") importing large amounts of Fentanyl and Carfentanil from an individual in China over the internet through the dark web, and then distributed these drugs throughout the Akron and Lorain areas with the assistance of the individuals listed below.

2.     Defendant Gibson-Martin resided on Popham Street in Akron, Ohio, with GIBSON, and was married to GIBSON.  Gibson-Martin operated the DTO with GIBSON and the individuals listed below.

3.     Defendant Dontashya S. Gibson ("D.Gibson") resided in an apartment on Shadybrook Drive in Akron, Ohio, with defendant Derrick A. Adams, II, her boyfriend, and was the daughter of GIBSON and step-daughter of Gibson-Martin.  D.Gibson and Adams sold and distributed Fentanyl obtained from GIBSON and Gibson-Martin.

4.     Defendant Derrick A. Adams, II ("Adams") resided in an apartment on Shadybrook Drive in Akron, Ohio, with his girlfriend, D.Gibson.  Adams sold and distributed Fentanyl obtained from GIBSON and Gibson-Martin.

5.     Defendant Lori E. Martin ("Martin") resided on Greenbay Drive in Barberton, Ohio, and was the mother of Gibson-Martin.  Martin assisted the DTO by holding large amounts of drug proceeds and then gave the drug proceeds back to GIBSON and Gibson-Martin at later dates for their personal use.

*Defendant's Initials* 

Plea Agreement of DONTE L. GIBSON – page 15 of 30

6.     Defendant Lisa A. Richardson ("Richardson") resided in an apartment on Hobart Avenue in Akron, Ohio. Richardson assisted the Gibsons' DTO by opening P.O. boxes to receive the Fentanyl and Carfentanil shipments from China, and pick up and deliver the drug shipments, as well as recruited others to do the same.

7.     Defendant Garret R. Frantz ("Frantz") resided on Smith Avenue in North Canton, Ohio, and was a relative of Gibson-Martin. Frantz opened a P.O. Box in his name at the direction of Gibson-Martin.

8.     Gibson-Martin directed Richardson, and others, to open P.O. boxes at several Post Offices throughout the Akron-Canton area. Defendant Richardson recruited others to do the same. Gibson-Martin retained the P.O. Box keys so she could control access to the various P.O. Boxes.

9.     GIBSON and Gibson-Martin purchased Fentanyl and Carfentanil from China over the internet through the dark web, and had the drugs shipped to the Akron-Canton, Ohio, area through the United States Postal Service ("USPS").

10.     GIBSON and Gibson-Martin used the various P.O. boxes as the delivery addresses for the Fentanyl and Carfentanil from China. Gibson-Martin tracked the packets on USPS's website using her Verizon cellular phone, which was associated to Martin's address on Greenbay Drive in Barberton, Ohio.

11.     GIBSON and Gibson-Martin used Richardson, Frantz and others to pick up the packages containing Fentanyl and Carfentanil from China and bring the packages to them at the Popham address, and elsewhere.

*Defendant's Initials* DLG

Plea Agreement of DONTE L. GIBSON – page 16 of 30

12.    GIBSON cut, or mixed the Fentanyl and/or Carfentanil with a cutting agent such as a health supplement white power, and turned approximately 70 grams to 80 grams of pure Fentanyl and/or Carfentanil into approximately 7 kilograms of saleable product.

13.    GIBSON and Gibson-Martin distributed the mixed Fentanyl and Carfentanil to others such as Adams, and others to sell in the Akron area.

14.    GIBSON and Gibson-Martin mailed, and used Richardson and others, to mail Fentanyl and Carfentanil to an Iowa Avenue residence in Lorain.  The packages were addressed to "Danielle Ferguson."

15.    GIBSON and Gibson-Martin used various residences and rented storage units to stash the cash and Fentanyl/Carfentanil.

16.    From in or around May 2016, continuing to on or about February 8, 2018, the exact dates unknown, GIBSON and Gibson-Martin purchased Fentanyl and Carfentanil over the internet on the dark web from an individual in China, and had it shipped via the USPS to various P.O. boxes in the Akron-Canton, Ohio, areas.

17.    On or about August 7, 2017, Frantz completed a USPS P.O. Box application at the Green, Ohio, Post Office, and rented P.O. Box 586 and was issued two keys for the box.

18.    On or about August 19, 2017, Richardson completed a USPS P.O. Box application at the Fairlawn, Ohio, Post Office.  Richardson rented P.O. Box 13837 and received two keys that she gave to Gibson-Martin.

19.    From on or about September 9, 2017, through on or about October 16, 2017, GIBSON and Gibson-Martin had at least four packages shipped from China, addressed to multiple individuals at P.O. boxes throughout the Akron-Canton areas.

*Defendant's Initials* DCG

Plea Agreement of DONTE L. GIBSON – page 17 of 30

20.     On or about September 9, 2017, the Gibsons caused a package to be mailed from China addressed to Richardson at P.O. Box 13837, Fairlawn, Ohio, bearing international tracking number EA293550445CN.  This package contained approximately 100 grams of an off-white crystalline substance in a clear bag within a silver mylar bag in among several packages of bagged food items.

21.     On or about September 22, 2017, Gibson-Martin completed a lease agreement in the name of A.D. at Frank's Self Storage, 5529 Manchester Road, Akron, Ohio, for Unit No. 10 in Building A.  Gibson-Martin initially wrote her own name down on the lease agreement, but then scribbled it out and wrote A.D.'s name above hers.

22.     On or about October 10, 2017, Richardson directed an individual with the initials H.V. to complete a USPS P.O. Box application in H.V.'s name for P.O. Box number 9387, Canton, Ohio.  Richardson also directed an individual with the initials T.W. to complete a USPS P.O. Box application in T.W.'s name for P.O. Box 36600, Canton, Ohio.

23.     On or about October 16, 2017, the GIBSONs caused a package to be mailed from China addressed to "Garret Francis" at P.O. Box 586 at the Green Post Office bearing international tracking number EA301636984CN.  This package contained approximately 100 grams of an off-white crystalline substance in a clear bag within a silver mylar bag in among several packages of bagged food items.

24.     On or about October 23, 2017, GIBSON mailed USPS Priority Mail package bearing tracking no. 9505 5159 1922 7296 1409 94 from the Barberton Post Office to "Danielle Ferguson" at the Iowa Avenue residence Lorain, Ohio.

*Defendant's Initials* DLG

Plea Agreement of DONTE L. GIBSON – page 18 of 30

25.     On or about October 26, 2017, at approximately 2:33 p.m., Frantz went to the Green Post Office and picked up the parcel bearing international tracking number EA301636984CN.

26.     On or about November 13, 2017, GIBSON mailed a package of Carfentanil bearing tracking no. 9505 5158 6251 7317 0720 49 to "Danielle Ferguson" at the Iowa Avenue residence in Lorain, Ohio.

27.     On or about November 28, 2017, Richardson mailed a package of Carfentanil bearing tracking no. 9500 1265 2386 7332 0712 04 from a Contract Postal Unit inside the Acme Fresh Market located at 3235 Manchester Road, Akron, Ohio, to "Danielle Ferguson" at the Iowa Avenue residence in Lorain, Ohio.

28.     On or about December 7, 2017, the GIBSONs caused international mail package bearing tracking no. EA304740898CN to be mailed from China containing 51 grams of Fentanyl to T.W. at P.O. Box 9387, Canton, Ohio.

29.     Gibson-Martin used her Verizon cellular phone to track package no. EA304740898CN on the USPS' website sixteen times from December 14, 2017 to December 15, 2017.

30.     On or about December 7, 2017, the GIBSONs also caused international mail package bearing tracking no. EA304740907CN to be mailed from China containing 48 grams of Fentanyl to D.V. at P.O. Box 2378, North Canton, Ohio.

31.     Gibson-Martin also used her Verizon cellular phone to track package no. EA304740907CN on the USPS' website sixteen times from December 14, 2017 to December 15, 2017.

*Defendant's Initials* DLG

32.    On or about February 8, 2018, GIBSON possessed a 29-round 40 caliber handgun magazine clip, twenty-nine 40 caliber bullets, a 22-round 40 caliber handgun magazine clip loaded with twelve rounds of 40 caliber ammunition at the Popham residence.

33.    On or about February 8, 2018, GIBSON and Gibson-Martin possessed seven sets of P.O. Box keys in a dresser drawer in the Popham residence and a handwritten note detailing the location of the boxes and name the boxes were in.

34.    On or about February 8, 2018 through on or about February 10, 2018, GIBSON and Gibson-Martin possessed approximately 694 grams of "sham" in Storage Unit No. 10, Building A, at Frank's Self Storage, 5529 Manchester Road, Akron, Ohio, which the GIBSONs purchased from China over the internet on the dark web believe it to be controlled substances.

35.    Beginning in or about May, 2016, and continuing to on or about February 10, 2018, the exact dates unknown to the Grand Jury, in the Northern District of Ohio, Eastern Division, and elsewhere, DONTE L. GIBSON, Audrey J. Gibson, aka Audrey J. Martin, Dontaysha S. Gibson, Derrick A. Adams, II, Lisa A. Richardson, Garret R. Frantz, and others known and unknown, did knowingly, and intentionally combine, conspire, confederate, and agree together and with each other, and with diverse others known and unknown to the Grand Jury, to possess with the intent to distribute and to distribute a mixture and substance containing Fentanyl, a Schedule II controlled substance, and a mixture and substance containing more than 100 grams of Carfentanil, a Schedule II controlled substance, that is an analogue, as defined in 21 U.S.C. § 802(32), of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("Fentanyl"), knowing that the substance was intended for human consumption, as provided in 21 U.S.C. § 813, all in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A), and 802(32).

*Defendant's Initials* DCG

36.     The amount of drugs possessed and distributed by Defendant during the course of the conspiracy and/or directly attributable to Defendant's actions and reasonably foreseeable within the conspiracy was more than 40 grams of Fentanyl, and more than 100 grams of Carfentinal.  Defendant knew that the substances Defendant was possessing and distributing was actually Fentanyl and Carfentinal.

## FACTUAL BASIS FOR MONEY LAUNDRY CONSPIRACY

### USE OF MONEY ORDERS TO LAUNDER PROCEEDS OF UNLAWFUL ACTIVITY

37.     On or about September 13, 2017, Gibson-Martin purchased or caused to be purchased three USPS money orders totaling $2,900 at the U.S. Post Office, in Akron, Ohio, 44319.  The money orders all listed Audrey Martin as the remitter and were made payable to American Express.

38.     On or about September 22, 2017, Gibson-Martin purchased or caused to be purchased five USPS money orders totaling $5,000 at the U.S. Post Office, in Fairlawn, Ohio, 44313.  The money orders all listed Audrey Martin as the remitter and were made payable to American Express.

39.     On or about September 28, 2017, Gibson-Martin purchased or caused to be purchased a total of six USPS money orders.  Three USPS money orders were purchased at the U.S. Post Office, in Akron, Ohio, 44314 and totaled $2,360.  The other three USPS money orders were purchased at the U.S. Post Office, in Barberton, Ohio, 44203 and totaled $2,900. The money orders all listed Audrey Martin as the remitter and were made payable to American Express.

*Defendant's Initials* DLG

40.     On or about October 7, 2017, Gibson-Martin purchased or caused to be purchased a total of two USPS money orders totaling $1,500 at the U.S. Post Office, Fairlawn, Ohio, 44313.  The money orders all listed Audrey Martin as the remitter and were made payable to American Express.

41.     On or about October 23, 2017, GIBSON purchased three USPS money orders at the Barberton Post Office totaling $2,700 that were all made payable to American Express with "Audrey Martin" listed as the remitter.

42.     On or about October 23, 2017, minutes after GIBSON left the Barberton Post Office, Gibson-Martin entered the Barberton Post Office and asked the window clerk what the maximum amount of money orders she could purchase without having to provide identification. The clerk advised her that any amount $3,000 or more required identification.  Gibson-Martin then purchased three USPS money orders totaling $2,800 that were all made payable to American Express with "Audrey Martin" listed as the remitter.

43.     On or about October 30, 2017, GIBSON and Gibson-Martin purchased or caused to be purchased eight USPS money orders totaling $7,600 at three different U.S. Post Offices. Three USPS money orders were purchased at the U.S. Post Office in Akron, Ohio, 44314.  The money orders listed Audrey Martin as the remitter and were payable to American Express. Three USPS money orders were purchased by GIBSON at the Barberton Post Office totaling $2,800 that were all payable to American Express listed Audrey Martin as the remitter.  Two USPS money orders totaling $2,000 were purchased at the U.S. Post Office in Akron, Ohio, 44319.  The money orders listed Audrey Martin as the remitter and one of the money orders was payable to American Express and the other was payable to Neiman Marcus.

*Defendant's Initials* ᴺ̣ᴳ̣

44.     On or about November 6, 2017, Gibson-Martin purchased or caused to be purchased four USPS money orders at two U.S. Post Offices.  Two USPS money orders totaling $1,250 were purchased at the U.S. Post Office in Akron, Ohio, 44312.  Two USPS money orders totaling $1,300 were purchased at the U.S. Post Office in Akron, Ohio, 44314.  All four money orders listed "Audrey Martin" as the remitter and were made payable to American Express.

45.     On or about November 7, 2017, Gibson-Martin purchased or caused to be purchased one USPS money order for $738.40 at the U.S. Post Office, in Akron, Ohio, 44306. The money order listed Audrey Martin as the remitter and was made payable to American Express.

46.     On or about November 13, 2017, Gibson-Martin purchased or caused to be purchased five USPS money orders at two U.S. Post Offices.  Three USPS money orders totaling $2,640 were purchased at the U.S. Post Office in Barberton, Ohio, 44203.  These money orders listed Audrey Martin as the remitter and were payable to American Express.  Two USPS money orders totaling $1,100 were purchased at the U.S. Post Office in Akron, Ohio, 44319.  These money orders listed Audrey Martin as the remitter and were payable to Neiman Marcus.

47.     On or about November 16, 2017, Gibson-Martin purchased or caused to be purchased four USPS money orders from the U.S. Post Office in Akron, Ohio, 44312.  Two USPS money orders totaling $1,470 were purchased at 11:52am, and two USPS money orders totaling $2,000 were purchased at 1:32pm. All four money orders listed Audrey Martin as the remitter and were payable to Neiman Marcus.

48.     On or about November 20, 2017, Gibson-Martin purchased or caused to be purchased six USPS money orders from two U.S. Post Offices.  Three USPS money orders totaling $2,800 were purchased from the U.S. Post Office in Fairlawn, Ohio, 44313.  These

*Defendant's Initials*

money orders listed no remitter, but were payable to Audrey Martin, Pound Cake. Three USPS money orders totaling $2,800 were purchased from the U.S. Post Office in Akron, Ohio, 44314. These money orders listed Audrey Martin or A. Martin as the remitter and were payable to Audrey Martin.

49.     On or about November 24, 2017, Gibson-Martin purchased or caused to be purchased six USPS money orders at the U.S. Post Office in Fairlawn, Ohio, 44313. Three USPS money orders totaling $2,500 were purchased at 2:00pm. Three additional USPS money orders totaling $2,500 were purchased at 2:05pm. All money orders listed Audrey Martin as the remitter and were made payable to Saks Fifth Avenue.

50.     On or about December 4, 2017, Gibson-Martin purchased or caused to be purchased three USPS money orders at two U.S. Post Offices. Two USPS money orders totaling $2,000 were purchased at the U.S. Post Office in Akron, Ohio, 44306. One USPS money order for $1,000 was purchased at the U.S. Post Office in Akron, Ohio, 44319. All money orders listed Audrey Martin as the remitter and were made payable to American Express.

51.     On or about December 9, 2017, Richardson purchased three USPS money orders totaling $2,800 at the U.S. Post Office in Barberton, Ohio, 44203. The money orders all listed Audrey Martin as the remitter and were made payable to Neiman Marcus.

<u>LUXURY ITEMS PURCHASED TO LAUNDER PROCEEDS OF UNLAWFUL ACTIVITY</u>

52.     In or around March 2017, Gibson-Martin applied for and opened a Saks Fifth Avenue Store Card, account number xxx7412 (formerly account number xxx6415). From on or about April 6, 2017, to on or about December 30, 2017, Gibson-Martin made payments on her card totaling approximately $208,504, using cash in-store at the Beachwood, Ohio, Saks Fifth Avenue location.

*Defendant's Initials* DLG

53.    From on or about July 30, 2016, through on or about February 12, 2018, Gibson-Martin made purchases of $686,850.71 from Saks Fifth Avenue and used a combination of cash, her Saks Fifth Avenue Store Card, her American Express card account number xxx1001, a debit card account number xxx5411, and her VISA card account number xxx6807 to pay for them.

54.    A.C. was an employee of Saks Fifth Avenue, and assisted GIBSON and Gibson-Martin, and others, to structure their purchases so that the $10,000 reporting requirement was not triggered at any time.

55.    From on or about July 27, 2017, through on or about January 8, 2018, GIBSON made purchases of $7,653.90 from Saks Fifth Avenue.

56.    From on or about October 19, 2017, through on or about February 4, 2018, Dontaysha Gibson made purchases of $26,943.25 from Saks Fifth Avenue.

57.    On March 17, 2017, Gibson-Martin made purchases of $10,082 at Saks Fifth Avenue in Beachwood, Ohio and paid for it using currency.  The items purchased included gift certificates, Burberry Handbags, and Chanel Handbags.

58.    On August 3, 2017, Gibson-Martin made the following transactions at Saks Fifth Avenue:  $1,066.22 purchase of Louis Vuitton items using her Saks Credit Card; $12,792.60 purchase of Gucci handbags and accessories paid in cash; and, $2,500.00 in-store Saks credit card payment made in cash.

59.    On October 19, 2017, Gibson-Martin and Dontaysha Gibson made the following transactions at Saks Fifth Avenue:  $3,126.60 purchase Saint Laurent shoes by Gibson-Martin using her Saks Credit Card; $7,527.60 purchase of Chanel handbags and Louis Vuitton items by Gibson-Martin paid in cash; and, $9,072.00 purchase of Louis Vuitton items by Dontaysha Gibson paid in cash.

*Defendant's Initials* DCG

Plea Agreement of DONTE L. GIBSON – page 25 of 30

60.     On November 17, 2017, Gibson-Martin and Dontaysha Gibson
made the following transactions at Saks Fifth Avenue:  $448.20 purchase of shoes by Gibson-Martin using her VISA card; $5,616.00 purchase of Chanel handbags by Gibson-Martin using her Saks Credit Card; $5,389.20 purchase of Louis Vuitton items by Gibson-Martin paid in cash; $2,500 in-store Saks credit card payment made by Gibson-Martin in cash; $2,500 in-store Saks credit card payment made by Gibson-Martin in cash; $176.04 purchase of MAC cosmetics by Dontaysha Ggibson paid in cash; $712.80 purchase of fragrances by Dontaysha Gibson paid in cash; and, $432.00 purchase of Gucci sunglasses by Dontaysha Gibson paid in cash.

61.     On November 25, 2017, GIBSON, Gibson-Martin, and Dontaysha Gibson made the following transactions at Saks Fifth Avenue:  $3,186.00 purchase of fur, Gucci men's accessories, and other items by Gibson-Martin paid in cash; $3,564.00 purchase of Louis Vuitton items by Gibson-Martin paid using her American Express card; $5,000.00 in-store Saks credit card payment made by Gibson-Martin in cash; $3,594.89 purchase of clothing and accessories by Dontaysha Gibson paid in cash; and, $3,881.18 purchase of clothing and accessories by GIBSON paid in cash.

<u>USE OF STRAW BUSINESSES TO LAUNDER PROCEEDS OF UNLAWFUL ACTIVITY</u>

62.     On or about November 7, 2015, Gibson-Martin formed JayT All Services, LLC with the Ohio Secretary of State using LegalZoom.com.  Per the Operating Agreement for JayT All Services, LLC, Audrey Jean Martin is the sole member of the company.

63.     On or about August 23, 2017, Gibson-Martin gave a sworn statement under oath in which she stated that JayT All Services was in the business of remodeling, cleaning out homes, painting homes, and anything else to do with homes.  Also on or about August 23, 2017,

*Defendant's Initials* ꓕꓰ

Gibson gave a sworn statement under oath in which he stated that JayT All Services was his wife's company in that he helps doing home improvement work.

64.     On or about May 24, 2016, Gibson-Martin formed Pound Cake Entertainment, LLC with the Ohio Secretary of State using LegalZoom.com, Inc.  Per the Operating Agreement for Pound Cake Entertainment, LLC, GIBSON and Gibson-Martin are both equal members of the company.

65.     Pound Cake Entertainment, LLC uses the website IAmPoundCake.com.  On or about February 2, 2018, the website described Pound Cake as an alter ego.  The website showed various photographs of Gibson-Martin.  The website offered, for a fee of $15 per month, access to "The Darkside" which is a member's only Snapchat account where you can view Gibson-Martin "being flirty or nasty depending on the day."  The website purports to sell branded clothing items such as t-shirts.  The website also has a link to "One of a Kind Items" which lists custom made items for sale.  The website lists credit cards accepted via Square, a credit card processor.

66.     On or about August 23, 2017, Gibson-Martin gave a sworn statement under oath in which she stated that Pound Cake Entertainment is her company.

67.     On or about April 20, 2017, Dontaysha Gibson formed G's Car Care and Detail LLC with the Ohio Secretary of State.  On the articles of organization, the company's purpose was listed as "Car Care Sales & Detailing."  The statutory agent for the company was listed as Fred L. Tolbert of F. Lees Tax Accounting Services Inc.  G's Car Care and Detail, LLC was formed by F. Lees Tax & Accounting Services Inc. at the request of GIBSON.

*Defendant's Initials* DLG

68.     On or about August 23, 2017, GIBSON gave a sworn statement under oath in which he initially stated that G's Car Care and Detail LLC was his business.  GIBSON later clarified that it is actually his daughter's business and that he manages the company for her.

69.     On or about December 8, 2015, Gibson-Martin opened PNC Bank account number xxx8236, in the name of JayT All Services LLC.  On the account signature cards, Gibson-Martin was the only signer and was listed as Member.  From on or about March 18, 2016, through on or about April 24, 2017, approximately $82,084 was deposited into this account of which Gibson-Martin deposited or caused to be deposited $68,862 in cash.

70.     On or about April 19, 2017, Gibson-Martin opened Huntington National Bank account number xxx4272, in the name of JayT All Services, LLC.  On the account signature card, Gibson-Martin listed herself as the company President, Owner, and CEO.  From on or about April 19, 2017, through in or about August 2017, approximately $27,428 was deposited into this account of which of which Gibson-Martin deposited or caused to be deposited $24,078 in cash.

71.     On or about August 2016, GIBSON set-up a payroll for JayT All Services, LLC managed by F. Lee's Tax and Accounting Services LLC using Intuit QuickBooks.  GIBSON told the accountant that JayT All Services LLC provided janitorial services.  From the bank accounts of JayT All Services LLC, including PNC Bank account xxx8236 and Huntington National Bank account xxx4272, payroll was paid to GIBSON and Gibson-Martin, as the only employees of JayT All Services LLC.  Funds from the JayT All Services bank accounts were direct deposited into the accounts of GIBSON and Gibson-Martin for purported payroll purposes.

*Defendant's Initials* DLG

Plea Agreement of DONTE L. GIBSON – page 28 of 30

72.     On or about September 2, 2016, GIBSON and Gibson-Martin opened PNC Bank account number xxx4666, in the name of Pound Cake Entertainment LLC. On the account signature card, GIBSON and Gibson-Martin were both signers and listed as Members. From on or about September 2, 2016, through on or about April 24, 2017, approximately $24,763 was deposited into the account, of which of which the GIBSONs deposited or caused to be deposited $22,111 in cash.

73.     On or about April 19, 2017, Gibson-Martin opened Huntington National Bank account number xxx4285, in the name of Pound Cake Entertainment, LLC. On the account signature card, she listed herself as the company President, Owner, and CEO. From on or about April 19, 2017, through in or about August 2017, approximately $29,605 was deposited into this account of which Gibson-Martin deposited or caused to be deposited $27,339 in cash.

74.  ·   On or about June 28, 2017, Dontaysha Gibson opened PNC Bank account number xxx2171, in the name of G's Car Care & Detail LLC. On the account signature card, she was listed as the only signer and was listed as a Member. From on or about June 28, 2017, through on or about August 7, 2017, approximately $3,900 was deposited into this account of which Dontaysha Gibson deposited or caused to be deposited $3,750 in cash.

<u>HOME/VEHICLE PURCHASES TO LAUNDER PROCEEDS OF UNLAWFUL ACTIVITY</u>

75.     Martin knew that GIBSON and Gibson-Martin earned cash via illegal activities. Martin held money for them. The GIBSONs gave Martin and her husband cash for expenses, including the installation of an in-ground pool at Martin's Greenbay residence in Barberton, Ohio, at the cost of $31,178.00.

*Defendant's Initials* DLG

Plea Agreement of DONTE L. GIBSON – page 29 of 30

76.     On or about August 11, 2016, Martin purchased a cashier's check from US Bank

for $42,609.50 payable to First American Title Insurance Company.  Martin purchased the

cashier's check using cash.  The purchase of the cashier's check was not recorded

on Martin's bank statements.  Martin told bank associates the cash was from a friend.

77.     On or about August 12, 2016, Martin provided the cashier's check to First

American Title Insurance Company for the purchase of the GIBSONs' residence on Popham

Street in Akron, Ohio.  Thereafter, the GIBSONs resided at Popham Street.

78.     The GIBSONs hired an individual known as A.A., an individual known to the

Grand Jury but not charged herein, to provide home remodeling services at the Popham

residence, including the construction of a garage.

79.     The GIBSONs gave A.A. $39,880 in cash.  The same day, the GIBSONs asked

for a refund of the money in the form of a check written to Martin.  A.A. did no work for Martin

and never met Martin.

80.     On or about December 22, 2016, A.A. deposited $39,880 of cash into his business

bank account at Huntington National Bank.  On the same day, A.A. purchased a cashier's check,

No. 2011240567, from Huntington National Bank payable to Marton for $36,380, at the request

of the GIBSONs.  The check listed the remitter as New Ara Home Improvements.  A.A. gave the

check to Gibson-Martin.

81.     On or about December 22, 2016, Gibson-Martin deposited or caused to be

deposited Huntington National Bank cashier's check No. 2011240567 for $36,380.00 into

Martin's US Bank checking account number xxx4811.

82.     On or about January 9, 2017, Martin transferred $35,850.00 from her

US Bank checking account number xxx4811, to her US Bank savings account number xxx7907.

*Defendant's Initials* DLG

83.     On or about January 19, 2017, Martin transferred $17,200.00 from her US Bank savings account xxx7907, to her US Bank checking account number xxx4811.

84.     On or about January 19, 2017, Martin wrote check number 4031 from her US Bank checking account number xxx4811, payable to Chrysler Capital for $17,137.80. The memo on the check stated "2016 Jeep xxx6798, Lease PAID in Full" for the lease.  Gibson-Martin had on a 2016 Jeep Grand Cherokee that Gibson-Martin possessed.

85.     Beginning in or around November, 2015, continuing to on or about February 10, 2018, the exact dates unknown to the Grand Jury, in the Northern District of Ohio, Eastern Division, and elsewhere, DONTE L. GIBSON, Audrey J. Gibson, aka Audrey J. Martin, Dontaysha S. Gibson, Lisa A. Richardson, Lori E. Martin, and others, known and unknown, did knowingly and intentionally combine, conspire, confederate, and agree together and with diverse others, known and unknown, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956(h), to wit:  to knowingly and intentionally conduct and attempt to conduct a series of financial transactions affecting interstate commerce, which transactions in fact involved the proceeds from a specified unlawful activity, knowing that the transactions involved the proceeds of some form of specified unlawful activity and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership or control of the proceeds of said unlawful activity, and to avoid currency transaction reports required by State and Federal law in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (ii).

*Defendant's Initials* DLG