UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

– – – – –

UNITED STATES OF AMERICA,        )
                                 )
                Plaintiff,       )  Case No. 5:18CR94
                                 )
        vs.                      )
                                 )
DONTE L. GIBSON,                 )
                                 )
                Defendant.       )

– – – – –

TRANSCRIPT OF PROCEEDINGS HAD BEFORE THE HONORABLE

JUDGE PATRICIA A. GAUGHAN, JUDGE OF SAID COURT,

ON MONDAY, SEPTEMBER 24TH, 2018,

COMMENCING AT 11:00 O'CLOCK A.M.

– – – – –

Court Reporter:            GEORGE J. STAIDUHAR
                           801 W. SUPERIOR AVE.,
                           SUITE 7-184
                           CLEVELAND, OHIO 44113
                           (216) 357-7128

GOVERNMENT
EXHIBIT

2

5:18CR94

2

1    APPEARANCES:

2        On behalf of the Government:

3            OFFICE OF THE U.S. ATTORNEY — AKRON
             BY:  MARK BENNETT, AUSA
4            208 Federal Building
             2 South Main Street
5            Akron, OH 44308

6                    and

7            OFFICE OF THE U.S. ATTORNEY — CLEVELAND
             BY:  DANIELLE K. ANGELI, AUSA
8            801 Superior Ave, W, Suite 400
             Cleveland, OH 44113

9

10       On behalf of the Defendant:

11           RHONDA L. KOTNIK
             SUITE 401
12           333 South Main Street
             Akron, OH 44308

13

14                    - - - - -

15

16

17

18

19

20

21

22

23

24

25

3

1                    P R O C E E D I N G S

2              THE COURT:  We are here in the matter of

3    United States of America versus Donte L.  Gibson, Case

4    No. 18CR94.  Present in Court is Mr. Gibson.  Is that

5    correct, sir?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Represented by his attorney,

8    Ms. Rhonda Kotnik; on behalf of the Government, Mr. Mark

9    Bennett.

10             MR. BENNETT:  Good afternoon, your Honor.

11             THE COURT:  Good afternoon.  And Ms. Dannie

12   Angeli.

13             MS. ANGELI:  Good afternoon, your Honor.

14             THE COURT:  And also seated at counsel table

15   is Agent Jennifer Conner.

16             MR. BENNETT:  Yes, your Honor.

17             THE COURT:  Sir, it is my understanding that

18   you do wish to withdraw your formerly entered plea of not

19   guilty to Counts 1 and 13 and enter a plea of guilty.

20             Is that correct?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Sir, I must ask you a series of

23   questions.  If at any time you don't understand, please

24   let me know, and of course, you can consult with your

25   attorney at any time.  I will give you the time and the

4

1  privacy to do so.

2            How far in school did you go, sir?

3            THE DEFENDANT:  I went to tenth, but then I

4  eventually got my diploma.

5            THE COURT:  You got your GED?

6            THE DEFENDANT:  No, diploma.

7            THE COURT:  You got your diploma?

8            THE DEFENDANT:  Yes.

9            THE COURT:  How old are you right now?

10            THE DEFENDANT:  I am 40.

11            THE COURT:  Are you a citizen of the

12  United States?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Are you presently under the

15  influence of any alcohol or any narcotic drug?

16            THE DEFENDANT:  No.

17            THE COURT:  Are you on probation, parole,

18  supervised release, community control, or anything of

19  that nature for any offense?

20            THE DEFENDANT:  Yes.

21            THE COURT:  Which would that be.

22            THE DEFENDANT:  PRC due to my release from

23  incarceration, and then they gave me probation for prior

24  — for a case when I came home.

25            THE COURT:  Okay.  So, sir, you are on

5

1  post-release control for one case and on probation for

2  another case?

3  THE DEFENDANT:  Yes.  Because it was a petty

4  case, yes.

5  THE COURT:  Okay.  Do you understand, sir,

6  by pleading guilty here you may be found to be in

7  violation of probation or post-release control or both,

8  and a sentence can be imposed in those cases and run

9  consecutive to anything I give you here.

10  Do you understand that?

11  THE DEFENDANT:  Yes.  I understand what you

12  are saying.

13  THE COURT:  And sir, you understand what the

14  word "consecutive" means?

15  THE DEFENDANT:  Yes, I do, Ma'am.

16  (Discussion held off the record between the

17  Defendant and his counsel.)

18  THE COURT:  All right.  Are you — for the

19  record, Mr. Gibson consulted with his attorney.

20  And sir, you take as much time as you need.

21  Would you like more time here, or are you ready?

22  THE DEFENDANT:  Go ahead.

23  THE COURT:  All right.  Are you satisfied

24  with the representation of your attorney?

25  THE DEFENDANT:  Yes.

6

1          THE COURT:  And sir, are you presently on
2    any medication?
3          THE DEFENDANT:  No.
4          THE COURT:  You have certain basic
5    constitutional rights, which I will now outline for you.
6    These are the rights you are giving up by pleading
7    guilty.
8          Do you understand that you have a right to a
9    trial by a jury, or you can have your case tried by me
10   with the consent of the Government and the approval of
11   this Court.
12         THE DEFENDANT:  No.  I don't understand
13   that.
14         THE COURT:  All right.  All right.  Let me
15   explain it.  Sir, what I am doing is, I am going over all
16   of the constitutional rights that you have.  By pleading
17   guilty, you are giving up these rights, so it is my duty
18   to go over the rights that you are giving up.  The first
19   right you have is to go to trial.
20         You are giving up that right by pleading
21   guilty, and I further explain that a trial can be by a
22   jury of your peers, or it could be by me.  Go ahead, you
23   could talk to her.
24              (Discussion held off the record between the
25   Defendant and his counsel.)

1          THE DEFENDANT:  Okay.  Go ahead.

2          THE COURT:  Do you understand that?  That

3    you are giving —

4              (Discussion held off the record between the

5    Defendant and his counsel.)

6          THE DEFENDANT:  Go ahead.

7          THE COURT:  Do you understand you are giving

8    up your right to a trial —

9          THE DEFENDANT:  Yes.

10         THE COURT:  — by a jury or by a Judge?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Do you understand, sir, that you

13   have a right to confront and cross-examine the

14   Government's witnesses, and again, this is the right you

15   are giving up.  Understood?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do you understand that you have

18   a right to subpoena or bring in witnesses in your own

19   defense.

20         THE DEFENDANT:  Yes.

21         THE COURT:  Do you understand that you have

22   a right to an attorney throughout all proceedings.

23             (Discussion held off the record.)

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand, sir, that had

8

1   you decided to go to trial you would have had the right

2   to take the witness stand and testify, or you would have

3   had the right not to take the witness stand and testify.

4           And if you had gone to trial and if you had

5   decided not to take the witness stand and testify, nobody

6   would have been permitted to comment on that fact.

7           So in other words, Mr. Bennett, Ms. Angeli,

8   couldn't get up in closing arguments and say, well, he

9   must be guilty because he didn't bother to tell us

10  anything on the witness stand.

11          Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  You are presumed innocent unless

14  you are proven guilty beyond a reasonable doubt.  Do you

15  understand, sir, that you don't have to prove anything at

16  all?  The burden of proof is on the Government.

17          Understood?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And do you understand, sir, that

20  by pleading guilty you are giving up all of these

21  constitutional rights that I just went over with you?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Sir, I have before me a document

24  that is entitled "Plea Agreement."  I am looking on page

25  13.  Your name is typewritten, a signature above it with

9

1    today's date.

2                    Did you sign and date this today?

3                    THE DEFENDANT:  Yes.

4                    THE COURT:  And did you initial the bottom

5    of each page?

6                    THE DEFENDANT:  Yes.

7                    THE COURT:  And, sir, did you initial the

8    bottom of each page of the attachment, the factual

9    basis?

10                   THE DEFENDANT:  Yes.

11                   THE COURT:  Did you read it, sir?

12                   THE DEFENDANT:  Yes.

13                   THE COURT:  And did you go over it with

14   Ms. Kotnik?

15                   THE DEFENDANT:  Yes.

16                   THE COURT:  Is there anything in here you do

17   not understand.

18                   THE DEFENDANT:  I wanted to ask you about

19   the 11(c)(1)(C).  I didn't —

20                   THE COURT:  Okay.  I am going to go over

21   that with you, absolutely.

22                   THE DEFENDANT:  Okay.

23                   THE COURT:  I am going to discuss that with

24   you, and then, after I do that, I will ask you again if

25   you have any questions.  So because I am going to go over

1    that with you, do you have any other questions, anything

2    else you don't understand?

3                    THE DEFENDANT:  Yes.  How they came up with

4    my level to be like a 36, like —

5                    THE COURT:  Okay.

6                    THE DEFENDANT:  How — that's kind of high

7    for my conduct due to, you know, what the Government put

8    in black and white, you know, what I am saying?  So I

9    don't understand how my level is so high.

10                   THE COURT:  Okay.  Thank you.  That's

11   another thing I am going to go over with you.

12                   Anything else?

13                   THE DEFENDANT:  Those are my two main

14   concerns.

15                   THE COURT:  Okay.  So this is what I am

16   going to do, Mr. Gibson, I am going to go over some of

17   the terms in the agreement, especially your two concerns.

18   Anything that I don't go over with you I want you to

19   understand every term in here is very important, and you

20   can ask me a question about anything at all in here, so I

21   will go over it with you.

22                   Then, at the end, I am going to ask you if

23   you have any other questions.  All right?

24                   THE DEFENDANT:  All right.  Thank you.

25                   THE COURT:  So, sir, I am starting on page

1    2, paragraph 2.  Count 1 indicates — I'm sorry — this

2    paragraph indicates that Count 1 is for a violation of

3    Title 21 United States Code, Section 846, conspiracy to

4    distribute fentanyl and carfentanil in violation of Title

5    21 United States Code, Sections 841(a)(1), (b)(1)(A) and

6    802(32).

7              Sir, do you understand what you have been

8    charged with in that count?

9              THE DEFENDANT:  Yes.

10              THE COURT:  And then, sir, it sets forth the

11    statutory maximum.  It says that the mandatory minimum

12    term is ten years.  The maximum term of imprisonment is

13    life; the minimum fine is $10 million dollars; maximum

14    $20 million; minimum period of supervised release is five

15    years; maximum period of supervised release life.

16              Do you understand the statutory penalty?

17              THE DEFENDANT:  Yes.

18              THE COURT:  Count 13, sir, is for a

19    violation of Title 18, United States Code, Section

20    1956(h), conspiracy to commit money laundering in

21    violation of Title 18, United States Code, Sections

22    1956(a)(1)(B) 1 and 2.

23              Do you understand?

24              THE DEFENDANT:  Yes.

25              THE COURT:  All right.  And then, sir, it

1    states that the maximum term of imprisonment is 20 years;

2    the maximum fine is $250,000; maximum period of

3    supervised release is three years.

4              Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Sir, the next paragraph says

7    that the sentence for the offense charged in Count 1 may

8    not be satisfied by a term of probation.

9              You understand that, do you not?

10             THE DEFENDANT:  Yes.

11             THE COURT:  And then, sir, let me discuss

12   with you paragraph 4.  What this paragraph says is that

13   the Government has filed a notice, and they have set

14   forth one prior felony conviction, which changes the

15   mandatory minimum to 20 years, fine of $20 million for a

16   minimum and a mandatory period of at least ten years of

17   supervised release with the maximum being life.  I am

18   going to stop right there.

19             Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Then, it says that you are

22   agreeing or affirming that you were convicted of that

23   felony drug offense that is in the notice that the

24   Government has filed, and it is set forth in this

25   paragraph.

1          Understood?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  Then, it says that the

4     Government is agreeing that it will not file a second 851

5     enhancement, which would give you a mandatory term of

6     life.

7                    Understood?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  All right.  Paragraph 7, sir, is

10    a paragraph entitled "Forfeiture."  It goes on to page 4,

11    page 5 and a couple sentences on page 6.

12                   Do you understand that?

13                   THE DEFENDANT:  Yes.

14                   THE COURT:  Then, sir, at the bottom of page

15    6, it sets forth the elements for Counts 1 and 13.

16                   Do I need for me to go over the elements

17    with you?

18                   THE DEFENDANT:  Yes.

19                   THE COURT:  Okay.  Paragraph 13 states that

20    for Count 1 the Government must prove beyond a reasonable

21    doubt that two or more persons conspired or agreed to

22    violate federal drug laws; that you did it knowingly and

23    voluntarily.

24                   You joined the conspiracy knowingly and

25    voluntarily, and the amount of carfentanil involved in

1      the conspiracy exceeded 100 grams.

2                    Do you understand those elements?

3                    THE DEFENDANT:  Yes, but that's not true.

4      That's where I am — that's where I am — that's where I

5      am kind of —

6                    THE COURT:  Okay.  Well, let me ask you

7      this, sir.  I am going to jump ahead.

8                    The appendix or the attachment, I should

9      say, to the plea agreement, do you see it there?  It

10     starts after page 13, so it starts on page 14.  Do you

11     see attachment A, factual basis for drug conspiracy, and

12     it goes over to page 20?

13                   THE DEFENDANT:  Yes, yes.

14                   THE COURT:  Did you have an opportunity to

15     read that?

16                   THE DEFENDANT:  Yes.  And that's where I

17     seen that — I didn't like a lot that was stated, but I

18     am forced into a plea agreement.

19                   THE COURT:  No, no, no, no.  You are not

20     forced into anything.  If you want to go to trial, you

21     have that right.

22                   THE DEFENDANT:  But see, this is what I am

23     saying, your Honor, I was told like — cause I asked my

24     counsel for one thing and instead of being done, it is

25     like you got to go to trial, you know what I am saying?

1    I am saying no.

2              I know for a fact it wasn't a hundred grams

3    of carfentanil, and it is like they are forcing me into

4    saying it was a hundred grams of carfentanil and I asked

5    my counsel to test it because the Government had tested

6    it, and the Government says no, this is what it is, and I

7    know that it is not.

8              THE COURT:  Okay.  I am going to stop you

9    there.

10             So first of all, sir, I want you to

11   understand that if there is something you don't agree

12   with in here nobody is forcing you to accept it.  You can

13   go — hang on, hang on — you can go to trial, so I don't

14   want to ever hear the word "force" because nobody is

15   forcing you.

16             This is what I am going to do.  I am going

17   to turn to the Government lawyers.  They have now heard

18   that you dispute the amount of carfentanil.  Is that

19   right?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Okay.  I am going to ask them to

22   respond to that, and I want you to listen carefully to

23   what Mr. Bennett — because Mr. Bennett just stood —

24   what he has to say, okay?

25             THE DEFENDANT:  Okay.

1          THE COURT:  And then ultimately, if there is

2     a dispute as to the amount and there may be, you are

3     going to have to make a decision.

4          THE DEFENDANT:  And see, my decision is

5     trial versus anything —

6          THE COURT:  Right.

7          THE DEFENDANT:  So, your Honor —

8          THE COURT:  Right.

9          THE DEFENDANT:  Okay.  Well, you might be

10    right, but you got to go to trial.

11         THE COURT:  Well, this is the problem.  My

12    guess is that Mr. Bennett is about to say what evidence

13    he has that supports it.  So he believes and Ms. Angeli

14    and the agent believe just as strongly that they can

15    prove that element as you believe they can't.  So it is a

16    decision you have to make.

17         So let's listen to what he has to say about

18    — Mr. Gibson, let's listen to what evidence he has that

19    it is this amount, that the carfentanil exceeds a hundred

20    grams.  Okay?  Then we will talk some.

21         Mr. Bennett?

22         MR. BENNETT:  Thank you, your Honor.  I

23    think, as the Court is aware, several search warrants

24    were executed in this case back in February.  During the

25    execution of one of the search warrants at Mr. Gibson's

1    daughter Dontaysha's apartment, which she shares with

2    Derrick Adams, there was located 28.8 grams of a white

3    powdery substance in a dresser drawer, and then there was

4    173 grams found in Mr. Adams' vehicle.

5            Testimony would be at trial that those drugs

6    were given to Ms. Gibson and Mr. Adams by Donte Gibson.

7    We also have the testimony that is all laid out here of

8    the various other shipments that came in, and it was a

9    mix of carfentanil and fentanyl that came in from China,

10   that was ordered over the dark web by Mr. Gibson and his

11   wife Audrey.  So all of that would come in as well.

12           It has been sent off.  I don't have the

13   actual lab report in front of me but has been provided to

14   defense counsel.  I am pretty certain it went off to BCI,

15   was tested, and they have confirmed — and there will be

16   testimony at trial — that it was together combined 201.8

17   grams of fentanyl.

18           THE COURT:  Ms. Kotnik?

19           MS. KOTNIK:  Your Honor, I understand, I

20   think — he understands there is a conspiracy charge, and

21   if I understand you correctly, he is asking to be

22   accountable for what he did and not —

23           THE COURT:  And many people get confused by

24   that, and if you are a member of a conspiracy and the

25   Government can prove you were a member of the conspiracy,

1    you are accountable for the full amount, even if you

2    didn't actually possess the full amount.

3                    THE DEFENDANT:  Okay.  I understand what you

4    are saying, your Honor, but throughout the time, the last

5    time that I talked to you and today to speak, I asked for

6    my counsel to do a test as well as the Government do a

7    test on all I am being accountable of, and it never

8    happened.

9                    So I am saying my counsel did a test, the

10   Government did their test, and it come back not what the

11   Government is saying.  My levels wouldn't be this high.

12   You know what I am saying?  I wouldn't be I am not as far

13   as in the Guidelines, and that's what I wanted to talk to

14   you about because it leaves me the word just go to trial.

15   Everything is go to trial.

16                   So I don't mind taking my plea, but what I

17   am saying is, I would like for you to know where I am

18   lost at because it is like if I am asking to test what

19   the Government tests, so that it would be —

20                   THE COURT:  Okay.  Let me stop you.

21                   Ms. Kotnik, he is speaking of — I'm not

22   certain I understand a test, a test as to whether or not

23   it is carfentanil.

24                   MS. KOTNIK:  I believe he is asking to have

25   it retested.

1        THE COURT:  It was tested.

2        MR. BENNETT:  Yes, your Honor, it was tested

3   and what maybe Mr. Gibson needs clarification on is the

4   way the system works is, it has an amount of carfentanil

5   in the actual — the total amount.

6        Mr. Gibson would take a small amount of

7   carfentanil that they would bring in from China.  We

8   intercepted 4.86 grams and a 5.05 grams of carfentanil.

9   But then, he would cut it with an agent that he used we

10  believe, and what the testimony would be, that he had

11  like a GNC product that he would take a smaller amount,

12  put it in the larger amount, and then sell it as that

13  larger amount.

14        So there may not — it may not be a 201.8

15  grams of pure carfentanil, but what we found has

16  carfentanil in it and was tested, so it was cut product

17  that they attempted to sell on the street.  It was

18  rejected by the buyer, and then they had it back, but it

19  does have carfentanil in it.

20        So I think he needs to understand that's how

21  the quantities work.  It doesn't have to be pure for it

22  to count as having carfentanil.

23        THE DEFENDANT:  And see that's where I am

24  not getting — I know me just personally, I know that

25  like — you know, that's where my argument was.

1              THE COURT:  Well, you know, sir, you don't

2    have to plead guilty.  Hang on.  That's what the

3    Government is going to present at trial.  If you don't

4    think the jurors are going to accept the Government's

5    position, then you should go to trial.

6              THE DEFENDANT:  But I am forced to go to

7    trial and get life.

8              THE COURT:  That's right.

9              THE DEFENDANT:  So it put me like at, it put

10   me in a bad situation.

11             THE COURT:  Well, sir, I don't know if they

12   are putting you in that.  They have negotiated a plea

13   bargain here, and you know, they are giving up something

14   with plea agreement and you give up something.  You both

15   are saying we don't know what the jurors are going to do.

16             We don't — we are not willing to take the

17   risk of going to trial and seeing what a jury is going to

18   do.  A jury may say "guilty," in which case you get life

19   because they are going to file another enhancement, or

20   the jury may say "Government, you haven't proven your

21   case beyond a reasonable doubt, so not guilty," which

22   means you will be a free man.

23             THE DEFENDANT:  Right.

24             THE COURT:  I will tell you this, first of

25   all, sir, please understand I don't care what you do.  I

1  hope you realize that.  I only care that what you do is

2  voluntarily and knowingly done.  I don't care whether we

3  go to trial or not.  I have to be here regardless.

4              I will say this to you.  This is a C

5  agreement because you asked about that.

6              THE DEFENDANT:  Okay.

7              THE COURT:  What that means, the Government

8  and you through your lawyer have agreed to a 240-month

9  sentence, okay?

10             THE DEFENDANT:  Okay.

11             THE COURT:  Normally, I can do a couple of

12  different things.  I can say today I accept your

13  agreement, period, which means no way would I give you

14  anything higher.  Or I could refer your matter to the

15  Probation Department for a presentence investigation

16  report, and once I review it, I could say you know what?

17  I don't accept the 240 months, in which case we would

18  start over again, but I will tell you what I am going to

19  do for you.

20             I will commit today to the 240 months.

21  Normally, I don't do that.  But — and I don't want you

22  to think that I am committing to it because I want you to

23  plead guilty, but I am hearing from you that you are very

24  concerned about the unknown.

25             THE DEFENDANT:  Right.

1          THE COURT:  So because of your concerns, I

2    am telling you that I will sentence you to the 240

3    months.  I still have to refer it for the probation

4    department for a presentence report.  I still have to

5    do that, but regardless of what comes back in that

6    report —

7          THE DEFENDANT:  Okay.

8          THE COURT:  — I will not say, oh, forget

9    it.  I am not going to do the 240.  If I tell you right

10   now on the record that you will be sentenced to 240,

11   that's what you will get no matter what the report says.

12   Now, I have to say it one more time, don't take that to

13   mean I care what you do.

14         THE DEFENDANT:  Okay.

15         THE COURT:  So if you want to have more

16   conversation with your lawyer, that's fine.  I am going

17   to have to ask you if what the Government is alleging in

18   this attachment is true and accurate.

19         THE DEFENDANT:  I am going to say yes and

20   no, but I —

21         THE COURT:  Okay.  Your yes and no I think

22   is exactly what Mr. Bennett said.  There was carfentanil

23   but you are contesting it was not that full amount

24   because it was cut with something else.  You don't

25   dispute the fact that when you put the carfentanil with

1    the cutting agent, that it was over 100 grams.  Am I

2    right?

3                THE DEFENDANT:  I am not disputing that,

4    your Honor, I am not disputing that.

5                THE COURT:  Mr. Bennett, would you then

6    agree with me that that's an acceptable acceptance of the

7    factual basis?

8                MR. BENNETT:  Yes, your Honor, I will.

9                THE COURT:  Okay.  That's fine.  Any other

10   concerns about the factual basis?

11               THE DEFENDANT:  No.

12               THE COURT:  All right.  If you want me to

13   stop, I will stop.  It is up to you if you want to keep

14   going with the plea.  I don't care, and I am not going to

15   be upset or angry or anything.

16               THE DEFENDANT:  It is life, your Honor.  I

17   mean, so yes, go ahead.

18               THE COURT:  All right.  Sir —

19               (Discussion held off the record.)

20               THE COURT:  Sir, we had discussed the

21   elements.  So you understand, the element the Government

22   must prove in paragraph 13, right?  That's where we left

23   off.

24               THE DEFENDANT:  Okay.  Go ahead, Ma'am.

25               THE COURT:  So you understand the elements?

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  And sir, paragraph

3  16 talks about the specific sentence, the agreed sentence

4  and what my options are, but I told you, I am accepting

5  the 240 months.  I am accepting your plea agreement.

6          So do you have any questions of me regarding

7  the C agreement?

8          THE DEFENDANT:  Just say — hold on your

9  Honor.

10          (Discussion held off the record with

11  Ms. Kotnik and the Defendant.)

12          THE DEFENDANT:  Okay.  Go ahead, your Honor.

13          THE COURT:  Okay.  So sir, in the normal

14  case, it is my job to come up with a sentence that is

15  sufficient but not greater than necessary to satisfy the

16  purposes of sentencing.

17          THE DEFENDANT:  I just need to know the

18  difference between 11(c)(1)(C) or whatever and 11(c)(A)

19  and (B).

20          THE COURT:  Good question.  Normally, they

21  are (B) agreements, which means you only recommend things

22  to me here.  This whole agreement would be we recommend

23  that you find the offense level to be whatever.  We

24  recommend that you give three levels off for acceptance

25  of responsibility.  A (C) agreement says, "Judge, once

1    you accept this agreement, you don't have a choice."

2    They are no longer recommendations.  You are bound by

3    what's in here.  That's the difference between a (B) and

4    a (C) agreement.

5                THE DEFENDANT:  Okay.  So (B) is more open

6    than (C)?

7                THE COURT:  I'm sorry.

8                THE DEFENDANT:  Are you saying (B) is more

9    open than (C)?

10                THE COURT:  More open.  Yes, a (B) agreement

11    is more open.  It doesn't give you certainty.  A (C)

12    agreement gives you certainty.

13                THE DEFENDANT:  So basically, you could go

14    above with the (B).

15                THE COURT:  A (B)?  Oh, yes, yes.

16                THE DEFENDANT:  You could go above with the

17    (B)?

18                THE COURT:  Yes.

19                THE DEFENDANT:  So a (C) is better than —

20                MR. BENNETT:  Your Honor, if I might, in

21    this case, even his guideline range would be 235 to 293

22    months.  So he is saving 50 months by getting the (C)

23    agreement at 240, and he is also eliminating the career

24    offender concern, which could be also 360 to life based

25    upon his situation.

1       So that's 30 years to life, so he has really

2   actually got a much better deal than his attorney has

3   negotiated for him by having a (C) agreement and locked

4   into the 240 months.

5       THE DEFENDANT:  Okay.  I understand what he

6   is saying, but the (B) agreement, could you feel the same

7   way with the (B) than the (C)?

8       THE COURT:  Wait a minute.  Wait a minute.

9   If this is a (B) agreement and what Mr. Bennett — if

10  Mr. Bennett is correct, you could be looking at 360

11  months up to life.

12      THE DEFENDANT:  With the (B) agreement?

13      THE COURT:  With a (B), a (B).

14      THE DEFENDANT:  Okay, okay, okay.

15      THE COURT:  And could I sentence you below

16  360?  I could.  Normally, I would give a guideline

17  sentence range, but I could go below, but I could go

18  above 360.

19      THE DEFENDANT:  Okay.

20      THE COURT:  Guideline ranges are advisory,

21  but they are important.  If I go below or above a

22  guideline range, I have to explain my reasons for doing

23  that, whereas with a (C) agreement I don't have to

24  explain anything.

25      THE DEFENDANT:  Okay.

1        THE COURT:  So what Mr. Bennett is saying —

2    and you have to understand, Mr. Gibson, I don't really

3    know because I don't know your case the way your lawyer

4    and the Government's lawyer know it.  I don't have the

5    presentence investigation report before me.

6        But Mr. Bennett is saying that your range

7    could either be 235 to 293 — again, it is advisory, but

8    it is very important — or it could be 360 to life.  So

9    he is saying you are saving definitely some time by the

10   (C) agreement.  I can't tell you if he is right or

11   wrong because I don't have anything before me to tell me

12   that.

13       THE DEFENDANT:  Okay.  Again, that's what I

14   was asking, like my level being 36, like that's extremely

15   high.  36, 37 is like 360 to life.  How did I — what did

16   I do in my life?

17       THE COURT:  What Criminal History Category

18   are you looking at, Mr. Bennett?

19       MS. KOTNIK:  He's looking at — Judge, I

20   think he is looking at, if he was a career offender, he

21   would be a 37, Category VI, which would be 360 to life.

22       THE COURT:  Correct.  Otherwise — okay.

23   Sir, if you are consider deemed to be a career offender,

24   you would be at a total offense level of — one more

25   time.

1                MS. KOINIK:  37 before responsibility so 37,

2       Criminal History Category VI.

3                THE DEFENDANT:  I am at a 36, your Honor and

4       I wonder how am I at a 36.

5                THE COURT:  Well, sir —

6                MR. BENNETT:  Your Honor, I would say for

7       the record he has an aggravated assault conviction

8       previously back in 2002.  He has a trafficking in heroin

9       conviction back in 2009, and then he has got this current

10      conviction.

11               So we are putting him on notice he may very

12      well — it is up to Pretrial Services, they make those

13      determinations — but we are letting him know he might be

14      a career offender, and he is running that risk by

15      avoiding by pleading to the (C) agreement.

16               THE DEFENDANT:  And due to the probable

17      cause, what is the Guidelines for the reason why they

18      can't?  That's the reason — see, where I am confused is,

19      the amount for the reason why they came —

20               THE COURT:  What?  I'm sorry.  I didn't hear

21      you.

22               THE DEFENDANT:  Well, they said like the

23      amount, the drug amount what I am looking at.

24               THE COURT:  Sir, I am thinking you shouldn't

25      plead.  I just don't think you really want to plead, and

1    that's fine.

2              THE DEFENDANT:  But it is like my counsel

3    telling me I won't win so, I don't have a choice.

4              THE COURT:  Well, sir, I think what she is

5    telling you what the evidence is that the Government is

6    going to present, and you have to look at that evidence,

7    and you need to make a decision whether you think you can

8    beat it.

9              Go ahead.  Ask me your next question.

10             THE DEFENDANT:  My thing was, when I look at

11   the complaint, the amount when they came, okay.  They say

12   it was 48, it was 51.  They said it was 4.5 and 5 grams.

13   When I look at that amount on this paper right here, it

14   is a difference.  It is an analog or regular fentanyl.

15             MR. BENNETT:  Your Honor, we did supersede

16   in this case.  And in part, it was because there was 400

17   grams of a white substance that was found in a storage

18   facility that Mr. Gibson and his wife had rented.

19   Initially, that tested in the field for fentanyl.  So he

20   was still going to be a (b)(1)(A) no matter what.

21             But when then we tested that, it came back

22   as it didn't have the drugs that were in it.  So when it

23   went out to the lab, the BCI is saying the same with the

24   other.  Then, what they assumed, the other drugs were

25   also going to be fentanyl, but when we sent it off to

1    BCI, the 201.8, when we sent it off to BCI, they came

2    back and said "no, this is actually carfentanil."

3              So I think that might be a part of his

4    concern, but the reality is either way when we initially

5    charged him, he was a (b)(1)(A), and then when we

6    superseded, he is a (b)(1)(A).  The drug amount or

7    the drug amount, there is just nothing I can do about

8    it.

9              THE COURT:  Did that answer your question,

10   sir?

11             THE DEFENDANT:  No, not at all.

12             THE COURT:  It did not.

13             Mr. Bennett, would you please listen to his

14   question again.

15             THE DEFENDANT:  My question is this:  It

16   states, if it is fentanyl, I have it right here.

17             THE COURT:  Mr. Bennett, do you know what he

18   is referring to?

19             THE DEFENDANT:  They have analog, if it is

20   analog, it says right here, if it is 10 grams but less

21   than 40 grams of fentanyl, which is the analog, 40 grams

22   but less than 160 grams, which is — that is why they

23   came.  So on the complaint, it was a level 24 for the

24   drug amount that they actually raided for.  It was a

25   level 24.

1        After they felt like they found more because

2   of them saying that it was a little bit of fentanyl, but

3   then the cut, they raised it to a 30.  They raised it.

4   They are saying that it was a hundred grams but less than

5   300 grams of carfentanil.  So they took my level from a

6   24 to a 30.  I am like huh?

7        Now, they gave me two points for money

8   laundering and four points for saying that I was

9   either an organizer, leader, or manager, and now I am a

10  36.

11        And that's where my — I understand that it

12  is either trial, but I couldn't wait to see your Honor so

13  I could just get an understanding when it comes to that

14  because the case alone is a level 24 from the drug

15  amount, that when they said this is what you did, this is

16  why you going to jail.

17        So to see that — for me to do my own

18  homework and read and learn and to go from what I read

19  and learned to now seeing that the Government just — it

20  is like they bolstered me up from a 24 to a 36, that's a

21  lot.

22        THE COURT:  Mr. Bennett?

23        MR. BENNETT:  Your Honor, just for the

24  record, he is referring to the tables in 2D1.1, and I

25  think what he is referring to, what he is talking about,

1    the complaint, is the search warrant affidavit that was

2    also there as far as the complaint and arrest warrant and

3    the original before the search, that's what we were

4    looking at.

5             There were 40 some grams that came in

6    through the mail, and then there was another 50 grams

7    that came in through the mail.  But at the time of

8    the search, we found an additional 201.8 grams of

9    carfentanil.

10            So that's why it is there.  Nothing personal

11   against Mr. Gibson.  I have no personal animus against

12   him.  That's just the amount of drugs that were found.

13            THE COURT:  Yeah.  Mr. Gibson, you can't go

14   by what's in a complaint or — it is what the Government

15   today can prove, and according to the superseding

16   indictment, it sets forth what the Government claims they

17   can prove, and sir, if you don't think they can prove it,

18   then you shouldn't plead guilty.

19            MS. KOINIK:  And Judge, if I may and what I

20   explained to him, too, is, we were just not looking at

21   the Guidelines any more, too, because he has two

22   problems, the problem he is a career offender.

23            THE COURT:  That's right.

24            MS. KOINIK:  And when 851 changed the

25   penalties that even took it to a higher level, so

1    guidelines themselves, although they are listed here,

2    might not really be an issue for us.

3              THE COURT:  And the Guidelines aren't

4    applicable once I say — and I have already said it —

5    that I would agree to the 240 months.  I still have to

6    refer it to the Probation Department, but no matter what

7    they come back, I am committing to 240 months, and sir,

8    there is nothing more I can say to me.

9              THE DEFENDANT:  But you might feel like I

10   don't deserve 240 months.

11             THE COURT:  You know what, sir —

12             THE DEFENDANT:  You might feel that way.

13             THE COURT:  — then you know what?

14             Don't plead guilty, but what I am saying to

15   you is, if there is a sentencing guideline range, it is

16   advisory, which means I don't have to go within that

17   range, but I have to come up with reasons why I go lower

18   or higher.

19             So if you want to take that chance, you

20   could take the chance by saying I don't want a (C)

21   agreement.  Let's not lock me into a (C) agreement.

22   Let's do a (B) agreement.  Or you could go to trial.

23             When I say that, I would ask the Government

24   if they would still go along with not filing that — hang

25   on listen, listen — I would ask the Government if they

1    would go along with not filing that second 851
2    enhancement and still allow you to do a (B) agreement as
3    opposed to a (C) agreement.
4                THE DEFENDANT:  But each I'm —
5                THE COURT:  No.
6                Mr. Bennett?
7                MR. BENNETT:  Your Honor, I hate to throw a
8    monkey wrench in that, but I mean, we have filed a 851.
9    So he is still locked in at the mandatory minimum 240.
10   So by getting a (B) agreement, all her Honor can really
11   do is go higher.
12               THE COURT:  Well, you know, you are
13   absolutely right.  I forgot about that.
14               THE DEFENDANT:  No way.
15               THE COURT:  Sir, sir — Mr. Bennett, I
16   apologize that I lost sight of that because of the nature
17   of this conversation.
18               Sir, Mr. Gibson, I want you to really listen
19   to what I have to say next.
20               We have been talking about guideline ranges,
21   but because the Government has filed that 851
22   enhancement, he is right, even if I don't think you
23   deserve 240 months, I don't have a choice because that's
24   the mandatory minimum that Congress has said I must give
25   you, and I apologize that I lost sight of that.

1      So even if we did a (B) agreement, I am not

2  allowed to go lower.  I am just not allowed.  Could I go

3  higher?  Yes.  I could go higher in a (B) agreement, but

4  I can't go lower, and again, I want to apologize to

5  Ms. Kotnik and Government's counsel for losing sight of

6  that very important fact.

7      THE DEFENDANT:  Your Honor, excuse me, your

8  Honor.  So basically, you are saying, okay, the mandatory

9  minimum of the case is ten years, give me that, and then

10  you give me ten more years for the filing —

11      THE COURT:  Mandatory minimum because the

12  Government has filed the enhancement, is 20 years.

13      Sir, you know what I will make this a little

14  bit easier for you.  These are your options.  You get 240

15  months.  Or you go to trial, you are found guilty, I must

16  give you life even I don't want to.  I don't have a

17  choice.

18      I must, assuming the Government, and they

19  said they are going to, file that second enhancement, or

20  you are found not guilty.  So it is either 240 months,

21  life if you are guilty; you walk if you are not guilty.

22  That's it.  Guidelines don't even matter.

23      THE DEFENDANT:  That's the bottom line.

24  That's just the bottom line.

25      THE COURT:  That's the bottom line.

1          THE DEFENDANT:  Okay.  Go ahead with the

2    proceeding.

3          THE COURT:  Okay.  So sir, what I am saying

4    to you is, in the normal case, I look at a bunch of

5    different factors in order to come up with a sentence.

6    Honestly, they are not relevant here because there is a

7    mandatory minimum, and the Government has agreed to the

8    mandatory minimum.

9          So normally, I would look at the

10   seriousness, which is what you want me to do, look at the

11   seriousness of the offense, look at the personal history

12   and characteristics, look at the issues of deterrence,

13   protecting the public, rehabilitation, disparity in

14   sentencing; look at the advisory Sentencing Guideline

15   range.  None of that is relevant.  When you are facing a

16   mandatory minimum of 240 months — and I am making the

17   commitment to you that I will not go above 240 months.

18          THE DEFENDANT:  Go ahead, your Honor.

19          THE COURT:  I'm sorry?

20          THE DEFENDANT:  Go ahead.

21          THE COURT:  All right.  You understand all

22   that so far?

23          THE DEFENDANT:  Yeah.

24          THE COURT:  Okay.  So sir, paragraph 18 and

25   19 set forth the stipulated guideline computation, and

1    the acceptance of responsibility, but again, it is not

2    relevant because I am not going to give you anything

3    above the mandatory minimum.

4             Understood?

5             THE DEFENDANT:  So what you are saying,

6    basically none of this matters.

7             THE COURT:  Yes.  Sir, you know when it

8    matters is, if I don't make the commitment to the agreed

9    sentence, and because you have asked good questions here,

10   you want to know everything, and I respect that.  I

11   respect that.

12            I just feel like you so want some certainty,

13   that that's why I am not doing my normal practice, and I

14   am saying to you, I am going to take the 240, even, even,

15   sir, if I get the presentence report back and I go, he

16   deserves more than 240.  You are getting 240, period.

17            THE DEFENDANT:  All right.  Thank you.

18            THE COURT:  Paragraph 21, sir, basically

19   states that you are giving up your right to appeal your

20   conviction or sentence and to challenge your conviction

21   or sentence collaterally through a post-conviction

22   proceeding.  However, you do reserve the right to appeal

23   any punishment in excess of the statutory sentence

24   maximum or any sentence in excess of 240 months, but I am

25   not going to give it to you, so that's not even relevant.

1    And then, sir, you understand that paragraph though,

2    right?

3              Do you want me to go over that again?

4              THE DEFENDANT:  Yes, one more time.

5              THE COURT:  Sure.  This paragraph says that

6    you are giving up your right to appeal your conviction or

7    sentence and to challenge your conviction or sentence

8    collaterally through a post-conviction proceeding.

9    However, you are permitted to appeal if I give you a

10   sentence higher than the statutory maximum or a sentence

11   higher than 240 months.

12             THE DEFENDANT:  Yes, I understand.  But you

13   said you are not going to do that, though.

14             THE COURT:  Right.

15             And then, sir, at the bottom of page 10,

16   there is a factual basis and relevant conduct, we already

17   addressed that with the attachment.

18             So is there anything I haven't explained to

19   you, anything else that you want to discuss?

20             THE DEFENDANT:  No.  But did you get my

21   letter?

22             THE COURT:  I'm sorry?

23             THE DEFENDANT:  Did you get my letter?

24             THE COURT:  I did.  I have it right here.

25   (Indicating.)

1        THE DEFENDANT:  Okay.  Thank you.

2        THE COURT:  And I read it.

3        THE DEFENDANT:  And you read it?

4        THE COURT:  Of course, of course.

5   Absolutely.  I read everything I get.

6        Sir, before I ask how you plead, would you

7   like to have a conversation with Ms. Kotnik?  Any more

8   time with her?

9        THE DEFENDANT:  Yes, one second.

10        (Discussion held off the record between

11   counsel and Defendant.)

12        THE DEFENDANT:  Okay, Ma'am.

13        THE COURT:  All right.  Any more questions

14   of me?

15        THE DEFENDANT:  You did an excellent job,

16   your Honor.

17        THE COURT:  Sir, thank you.

18        Sir, do you understand and do you believe

19   that I don't care what you do here?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Do you understand the only thing

22   I care about is that you make your plea knowing

23   everything.

24        Do you believe that?

25        THE DEFENDANT:  Yes, yes.

1      THE COURT:  All right.  Knowing all that I

2  have just outlined for you, how do you plead to Count 1

3  of the superseding indictment?

4      THE DEFENDANT:  Guilty.

5      THE COURT:  And Count 13.

6      THE DEFENDANT:  Guilty.

7      THE COURT:  And in making this plea of

8  guilty, do you understand that no one can make any

9  promises for me as to what I am going to do in your

10  case?

11      THE DEFENDANT:  Yes.

12      THE COURT:  Has anyone made any promises to

13  you other than what you have heard here in open Court, or

14  has anyone threatened you to convince you to plead?

15      THE DEFENDANT:  No.

16      THE COURT:  Is your plea voluntarily made

17  and of your own free will?

18      THE DEFENDANT:  Yes.

19      THE COURT:  I do, in fact, find there to be

20  a factual basis for your plea of guilty.  I accept your

21  (C) plea agreement, and I accept the 240 months agreed

22  sentence, and I accept your plea of guilty to Counts 1

23  and 13.  Even though I — you know, I am giving you the

24  240 months, I still must refer your matter to the

25  Probation Department for a presentence investigation

1    report.

2                    THE DEFENDANT:  Okay.  Can I —

3                    THE COURT:  I still have to do that.

4                    THE DEFENDANT:  Will I get a copy of that.

5                    THE COURT:  Yes, yes.  Your sentencing date

6    is, Mary?

7                    JUDICIAL ASSISTANT:  January 16th at 11:30

8    in the morning.

9                    THE COURT:  Ms. Kotnik, is that date and

10   time convenient?

11                   MS. KOTNIK:  Yes, your Honor.  January 16th

12   at 11:30.

13                   THE COURT:  Mr. Bennett, Ms. Angeli?

14                   MR. BENNETT:  Yes, your Honor.  We are both

15   available on that day.

16                   THE COURT:  Sir, you will be back here

17   January 16th at 11:30 in the morning for sentencing.

18                   THE DEFENDANT:  All right.  Thank you.

19                   THE COURT:  And again, sir, no matter what

20   that report says, I will not go back on my word.

21                   THE DEFENDANT:  All right.  Thank you.

22                   THE COURT:  We have it on the record.  Your

23   lawyer can always get a copy of the transcript, but

24   that's not who I am.  I am giving you have my word.  All

25   right?

1             THE DEFENDANT:  All right.  Thank you.

2             THE COURT:  Ms. Kotnik, is there anything

3 further?

4             MS. KOTNIK:  Just when appropriate, he would

5 like to have contact with his wife and his son-in-law,

6 right now their cases are still pending but when

7 appropriate, if he is able to contact them.

8             MR. BENNETT:  We haven't had everyone plead

9 at this point.

10            THE COURT:  Now is not appropriate, but when

11 appropriate, you won't have a problem?

12            MR. BENNETT:  No.

13            THE DEFENDANT:  Like in the jail, they have

14 me and Adams separated, and there is no need to be

15 separated.

16            Could they take the separation off me and

17 Adams at the jail?

18            THE COURT:  Well, I think what Mr. Bennett

19 is saying, once the co-Defendant pleads guilty or goes

20 to trial, then he is not going to have a problem with

21 that.

22            MR. BENNETT:  Yes, your Honor.

23            THE COURT:  But until there is a plea of

24 guilty or a finding of guilt, you are objecting?

25            MR. BENNETT:  Yes.  We would request they

1  remain separate per the detention orders.

2  THE COURT:  Do you understand, sir?

3  THE DEFENDANT:  Yes.

4  THE COURT:  But let's assume — and I have

5  no idea — let's assume for the sake of argument the

6  co-Defendant pleads guilty, you won't wait for sentencing

7  before agreeing to the —

8  MR. BENNETT:  No, your Honor.  As far as we

9  know, there is no animus between Mr. Adams and

10  Mr. Gibson, so we would have no concerns.

11  THE COURT:  Okay.  So sir, if — and I have

12  no idea — if he pleads guilty, we will take away that

13  separation order.  We won't wait for January or February

14  for a sentencing.

15  THE DEFENDANT:  All right.  Thank you.

16  THE COURT:  All right.  And so, Ms. Kotnik,

17  anything else?

18  MS. KOTNIK:  No, your Honor.  Thank you.

19  THE COURT:  Mr. Bennett, Ms. Angeli?

20  MR. BENNETT:  Nothing on behalf of the

21  Government.

22  THE DEFENDANT:  Another, too, my daughter,

23  what about my daughter?  Can she come see me now that I

24  am able to I plead out?

25  MS. KOTNIK:  Once her case is resolved.

1              THE COURT:  Same thing, Mr. Bennett?

2              MR. BENNETT:  Yes.  We should be close with

3  that one, your honor.

4              THE COURT:  Once her case is resolved, the

5  answer is yes.

6              THE DEFENDANT:  Her case will be over soon.

7              THE COURT:  Yes.

8              THE DEFENDANT:  All right.  Thank you.  You

9  are all set, Mr. Gibson.  I will see you in January.

10           (Hearing concluded at 12:55 p.m.)

11                - - - - -

12

13            C E R T I F I C A T E

14           I, George J. Staiduhar, Official Court

15  Reporter in and for the United States District Court,

16  for the Northern District of Ohio, Eastern Division,

17  do hereby certify that the foregoing is a true

18  and correct transcript of the proceedings herein.

19

20

21

22           s/George J. Staiduhar
              George J. Staiduhar,

23           Official Court Reporter

24           U.S. District Court
              801 W. Superior Ave., Suite 7-184

25           Cleveland, Ohio 44113
              (216) 357-7128